MANUEL DE TORRES, peticionario, *v.* CORTE DE DISTRITO DE SAN JUAN, HON. J. L. CÓRDOVA DÍAZ, JUEZ, demandada.

Núm. 1226.—*Sometido:* Marzo 4, 1941. *Resuelto:* Abril 22, 1941.

*Manuel de Torres,* por su propio derecho; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

El presente es un recurso de *certiorari* por virtud del cual Manuel de Torres pide a esta Corte Suprema que anule una orden para mostrar causa dictada en cierto procedimiento de desacato que contra él se siguiera y la sentencia pronunciada en el mismo.

El auto fué expedido, reclamándose el expediente sobre desacato tramitado en la Corte de Distrito de San Juan. Comienza por la orden para mostrar causa dictada en diciembre 17, 1940, que dice:

"Por cuanto: El Juez de Distrito que suscribe y en uno de los días del mes de diciembre del corriente año 1940 recibió la copia de una carta dirigida al Dr. Rupert Emerson por el querellado Manuel de Torres, en la cual se hacen, entre otras, las siguientes manifestaciones:

" ' . . . and that both the San Juan District Prosecutor and the Attorney General of Puerto Rico, Hon. George Arthur Malcolm are in fact conspiring with Gonzalo Aponte, Judge Marcelino Romany and others to defraud the writer of his capital, and his properties.

" ' Until now and for the past two years I have been peacefully trying to recover my confiscated properties through peaceful, law abiding legal action in the San Juan District Court. The District Court of San Juan, however, through the medium of its Judges Roberto Todd, Jr. and Marcelino Romany, has been criminally cooperating with, aiding, assisting and protecting the confiscators of my properties to illegally retain them; and in this they have been sup-

ported by the San Juan District Prosecutor and the Attorney General of Puerto Rico to both of whom I have previously appealed and both of whom have denied me the right to prosecute the confiscators of my properties on criminal charges allegedly on the grounds that no prosecution can be started until the civil suit is disposed of by the district court; whose Judge Romany in turn has made up his mind that he will not render his decision until it is too late to start any criminal action against his protegees.

" 'Corrupt Judge Marcelino Romany, before whom trial of action 31058 was held on October 18th and 19th, 1939, more than thirteen months ago, is benevolently and criminally cooperating with the San Juan District Prosecutor and Attorney General Malcolm to prevent the prosecution of Juan Ramón de Torres and Juana Vanderlinden, confiscators of my funds and my properties, and embezzlers of the funds of the estate of Ramón A. Torres, by delaying decision in case 31058 until the statutory three years provided by the statute of limitations shall have outlawed any criminal action against them.

" 'Case 31058 still "pending decision by the court" more than five months after the referee rendered his report and apparently relegated to eternity by corrupt Judge Marcelino Romany.

" 'And while Romany keeps the case sleeping under lock and key in his private office to insure the freedom of his protegee Juan Ramón de Torres, and to make sure that no one stops him from continuing appropiating other people's money, the San Juan District Prosecutor as well as the Attorney General of Puerto Rico are cooperating with Judge Romany to insure the freedom of Juan Ramón de Torres by refusing to prosecute referee Aponte for falsifying and forging his report to the Court.

" 'All the foregoing has been written to show Attorney General Malcolm that until now I have only been moving according to law, peacefully and patiently appealing to the San Juan District Court for redress through the means provided by law—all of which have failed due to the abdication of Judges Todd and Romany and of the Attorney General himself in favor of control of their respective offices by criminals, thus creating a state of lawlessness in Puerto Rico under which a man who has managed another's properties under power of attorney can refuse to render an accounting of the funds collected or received as attorney for his principal, and can continue retaining those properties and collecting the income from same without accounting to the real owners, and can depend upon Judge Mar-

celino Romany to withhold his decision in a case started to compel that man to render an accounting to his principal as provided by law, until such time as criminal action (on) him will have been outlawed by the statute of limitations, and while through all this our most illustrious Attorney General of Puerto Rico George Arthur Malcolm has been insisting that he cannot prosecute Juan Ramón de Torres until Romany decides case 31058, and now the Attorney General apparently refusing to prosecute Gonzalo Aponte for falsifying and forging his report to the Court, and as long as the Attorney General insists on waiting for Romany to decide and Romany insists on not deciding. I can continue being robbed and deprived of the income of my properties as well as of the funds collected by Juan Ramón de Torres in exercise of my power of attorney, all with the aid, assistance, cooperation and protection of the Attorney General of Puerto Rico and his subordinate, the San Juan District Prosecutor, as well as with the aid and assistance of corrupt Judges Roberto Todd, Jr. and Marcelino Romany.

* * * * * * *

" 'Failure on Mr. Malcolm's part to take immediate action within not more than 10 days, will compel me to proceed by force and violence for the protection of my rights and the recovery of my funds and properties. I am resolved to forfeit my liberty if necessary to obtain a judicial administrator for the properties and to force a decision of case 31058 by Judge Romany, if Attorney General Malcolm refuses to use his administrative powers to compel this corrupt Judge Romany to decide case 31058.. . . . I am driven by Attorney General Malcolm, Judge Todd and Judge Romany to use force and violence to attain what could be attained and what I have been trying to attain by lawful, peaceful procedure as provided by law, if honest judges were on the San Juan District Court bench instead of criminals like Marcelino Romany.

" 'And here, Mr. Malcolm, I will justify the use of that word "criminal" as applied to Judge Marcelino Romany. I will and must prove to you that he is a criminal, unfit to occupy the position of District Judge and that the use of the word "criminal" as applied to Marcelino Romany is not limited to his complicity in a conspiracy to defraud me by indefinitely delaying decision in case 31058 (cases now before Judge Romany are, I believe in the 34,000 numeration,) and with, I believe, but one other exception, my case is the oldest pending decision by him.

* * * * * * *

" 'Romany, trial judge in case 31058 is criminally delaying decision in case 31058 to permit Juan Ramón de Torres, a protegee of Romany, to remain in possession of my funds and my confiscated properties.

" 'Romany keeps on deciding more recent cases than case 31058, with the criminal intent of concealing felonies committed in connection with case 31058 by the defendants and their lawyers, thereby helping to deprive me of my properties without due process of law, the laws of Puerto Rico notwithstanding.

" 'I will prove that Judge Romany's interest in delaying a solution of case 31058 is not limited to conspiring with others to deprive me illegally of my properties, . . . . .

" 'Now, Mr. Malcolm, you will probably understand why, Romany, as trial Judge in case 31058, is holding up his decision of the case, it being one against his friend Juan Ramón de Torres, and involving as it does the very same property, Sol 19.

" ' . . . Juan Ramón de Torres must feel pretty sure about his ability to continue bribing judges, fiscals and even the Attorney General to keep out of prosecution and prison in spite of all his sworn testimony in the Zamorano case and in case 31058 tried before his friend Romany.

" 'The foregoing, Mr. Malcolm, are only some of the reasons why corrupt Judge Romany is holding up his decision in case 31058. Romany, corrupt Judge Romany, is not interested in deciding a case that may send his protegee to prison and that may result in criminal investigations which will result in disclosures of Romany and Massari's own criminal actions as district prosecutors, which may in turn cause their removal as district Judges.

" 'I can prove to any jury that the San Juan District Court has ceased to function as a Tribunal of Justice and that at least two of its judges, Roberto Todd, Jr. and Marcelino Romany, use their official positions as judges to permit criminals to confiscate other people's properties and retain them illegally.

" ' . . . . it will establish the basis for my acquittal, and for the ultimate prosecution not only of Gonzalo Aponte and Juan Ramón de Torres, but also of Marcelino Romany, Domingo Massari, Roberto Todd, and our most illustrious protector of criminals Attorney General George Arthur Malcolm. . . . .

" ' . . . AND THAT THE JUDGES, THE DISTRICT PROSECUTORS, AND EVEN THE ATTORNEY GENERAL GEORGE ARTHUR MALCOLM CONSPIRE WITH CRIMINALS TO DEPRIVE CITIZENS OF THEIR RIGHTS AND PROPERTIES, THE LAWS OF PUERTO RICO NOTWITHSTANDING.

" ' . . . while the authorities, Fiscals Franco and Massari, Judges Todd and Romany and Attorney General Malcolm have been using their official positions to enable that criminal Juan Ramón de Torres to continue robbing me of the money that was so badly needed to save my daughter's life, and to enable him to remain in possession of my confiscated properties, and while corrupt Judge Romany has been delaying decision in case 31058 for fear that his decision may send his friend and protegee to prison and cause his own removal as District Judge;

" ' . , . . if Romany continues to refuse to decide the case, by arresting Romany, Aponte, Juan Ramón de Torres, and others, for conspiracy to defraud or on any of the many other charges which the Attorney General knows his office can prove against Romany and the others.'

"POR CUANTO: Esas manifestaciones se refieren al caso civil Núm. 31058, seguido por el querellado Manuel de Torres contra Juan Ramón de Torres y Juana Vanderlinden.

"POR CUANTO: Las transcritas manifestaciones constituyen una crítica injuriosa e infamatoria de los procedimientos de este tribunal, tendiente a desacreditar injustamente a esta corte y especialmente al Juez de Distrito que suscribe, y enviadas por el querellado Manuel de Torres por correo certificado al Juez de Distrito que provee.

"POR TANTO: Esta corte ordena que el querellado Manuel de Torres comparezca ante este tribunal el día 27 de diciembre de 1940, a las 9:00 de la mañana, a exponer las razones, si es que algunas tiene, por las cuales no deba ser castigado por desacato a este tribunal.

"Dada en San Juan, P. R., hoy día 17 de diciembre de 1940.— (Fdo.) M. Romany, Juez."

Notificado Torres, pidió una prórroga de cuarenta días que le fué negada, solicitando entonces—en diciembre 23, 1940—que se anulara la orden por los motivos que expresa.

Siguen dos documentos marcados Ex. 1 y 2 del Pueblo— civil 31058—dic. 27, 1940. El primero es una copia en carbón del "Memorandum to Hon. George Arthur Malcolm, Attorney

General of Puerto Rico'', catorce páginas a máquina a un solo espacio, y el segundo una carta al dicho Attorney General acompañando el memorándum original firmado por Manuel de Torres, al pie del cual se consigna:

"Copies to: Dr. Rupert Emerson, Director, Division of Territories and Possessions, Department of the Interior.—Hon. Luis Muñoz Marín, President, Partido Popular Democrático.—Hon. William H. King, Senate Judiciary Committee, U. S. Senate, Washington, D. C."

A continuación aparece un sobre cursado por el correo con la siguiente dirección:

"Special Delivery.—Sr. Marcelino Romany, Concordia 31, Parada 13, Santurce, P. R."

Siguen copias en carbón de una notificación de oposición del demandante al informe del árbitro en el caso número 31058 de la Corte de Distrito de San Juan, *Manuel de Torres v. Juan Ramón de Torres y Juana Vanderlinden,* examen de libros y documentos y cobro de dinero, y de una resolución sobre declaratoria de herederos del Dr. Ramón A. Torres, dictada en diciembre 12, 1921.

Inmediatamente se encuentra la opinión y sentencia de la corte de distrito que es como sigue:

"Se le imputa al querellado el haber enviado a uno de los jueces de esta corte copia de una carta dirigida por el querellado al Dr. Ruppert Emerson en la que tilda de criminal y corrupta la conducta de dicho juez, y de otros funcionarios, en relación con un caso que está pendiente en esta corte, y amenaza con recurrir a la fuerza y la violencia en la protección de sus derechos en el caso de que sus quejas no sean atendidas con prontitud.

"El querellado radicó una moción, antes del día citado para la vista, solicitando se dejara sin efecto la orden inicial en este procedimiento, por cuanto la misma no expone un caso de desacato de acuerdo con la ley de marzo 1 de 1902, según enmendada. Es cierto que los actos imputados al querellado no caben dentro de la letra de ninguno de los apartados del artículo primero de dicha ley, pero si bien la ley citada limita las facultades de las cortes en cuanto a la sanción aplicable en casos de desacato (*Coll* v. *Leake, Juez,* 17 D.P.R.

857, aunque véase *dictum* aparentemente contra en *Ex parte Lastra,* 56 D.P.R. 559), no limita expresamente el poder de las cortes para castigar por desacato a aquellos casos que se definen en el estatuto. Donde existen disposiciones estatutarias que expresamente pretenden limitar el poder de las cortes para determinar lo que constituye desacato, como en California, Pennsylvania, y en las Cortes Federales, por ejemplo, existe cierto conflicto entre las autoridades respecto a la facultad de la legislatura para adoptar tales medidas. (Véase el artículo de Frankfurter y Landis en 37 Harvard Law Review 1010 y la anotación en 121 A.L.R. 215.) En Puerto Rico, sin embargo, el estatuto no es expresamente restrictivo del poder judicial. Sencillamente dice conferir a las cortes facultad para castigar por desacato en una serie de situaciones. La ausencia en el estatuto local de fraseología restrictiva, considerada a la luz del concepto que en el año 1902, en que se adoptó el estatuto, se tenía del poder judicial en materia de desacato, indica que no fué la intención de la legislatura intervenir con el poder de las cortes para determinar en qué casos debía ejercitarse la sanción del castigo por desacato a los fines de proteger el prestigio, la dignidad y la eficacia del poder judicial. Así lo debe haber considerado nuestro Tribunal Supremo al resolver que constituye desacato dirigir una carta a una corte con el propósito de influir en la resolución de un caso pendiente ante dicha corte, sin que el tribunal considerase necesario el hacer referencia al estatuto de 1902, y a pesar de que el acto en cuestión no está comprendido entre los desacatos de que habla dicho estatuto. *In re Rojas,* 17 D.P.R. 1097.

"En el caso de autos la carta a que se refiere la querella contiene una crítica injuriosa a esta corte, tiende a desacreditar injustamente a la corte, y el envío de copia de la misma al juez ante quien pende el caso a que se refiere la carta, difícilmente puede imputarse a otro móvil que no sea el de que las amenazas pudiesen influir en la resolución del caso. Constituye por lo tanto desacato el acto que la querella imputa al querellado, por lo que se declara sin lugar su moción para dejar sin efecto la querella. *Cooke* v. *United States,* 267 U. S. 517, 69 L. Ed. 767, *In re Rojas,* supra, y véase las autoridades citadas en la anotación en 31 A.L.R. 1239.

"En el acto de la vista el acusado admitió haber escrito la carta a que se refiere la querella, dirigida al Procurador General de Puerto Rico, y haber enviado copias al Dr. Emerson y a uno de los jueces de esta corte, ante quien pende el caso a que se refiere la carta.

Explicó que no tuvo la intención de desacatar a la corte, y que actuó movido por la desesperación que en su ánimo ha venido produciendo la situación económica porque atraviesa, que está íntimamente relacionada con el litigio a que se contrae la carta, y que le ha impedido atender debidamente graves dolencias físicas que sufre su hija.

"La actitud del querellado, y la explicación por él dada, mitiga la gravedad de su falta, pero no puede borrarla ni eximirle totalmente de la sanción que merece su conducta.

"La corte declara al querellado culpable del desacato que se le imputa y, considerando su arrepentimiento, su situación económica, y la naturaleza grave del desacato cometido, lo condena a pagar una multa de $50, o en su defecto un día de cárcel por cada dólar que deje de satisfacer, sin que el encarcelamiento exceda en ningún caso de 10 días.

"DADA EN CORTE ABIERTA, en San Juan, Puerto Rico, hoy día 10 de enero de 1941.—(Fdo.)   Jorge L. Córdova, Juez de Distrito.— CERTIFICO: (Fdo.)   José L. Hernández, Secretario."

La petición de *certiorari* es muy extensa.   Creemos que el resumen que de ella hace el fiscal en su informe con respecto a los motivos en que se funda, es correcto.  Dice:

"1.—Que la sentencia es nula porque la corte se excedió en su jurisdicción, ya que el procedimiento seguido fué ilegal e irregular, (*a*) por no haber mediado acusación del fiscal, (*b*) porque el fiscal intervino en el caso contra el peticionario, no obstante no haber presentado acusación alguna.

"2.—Que aun asumiendo el procedimiento correcto, la sentencia es nula porque no se consigna en ella la fecha y el lugar del alegado desacato, según lo requiere la ley.

"3.—Que aun asumiendo el procedimiento correcto, la sentencia es defectuosa porque lo declara culpable de haber escrito una carta dirigida al Procurador General de Puerto Rico, mientras que la orden le imputaba haberla dirigido al Dr. Rupert Emerson.

"4.—Que aun asumiendo la legalidad del procedimiento, la sentencia es defectuosa porque los hechos imputados al querellado no caen dentro de la ley de desacato.

"5.—Que la carta en cuestión es una comunicación privilegiada."

El primer motivo no está bien fundado.  No se necesitaba formular una acusación.   La orden para mostrar

causa la sustituye. Bastará que citemos lo dicho por este tribunal en *Sánchez* v. *Romany, Juez,* 53 D.P.R. 596, 597, a saber:

"No es necesario que nos detengamos a considerar si un procedimiento de desacato criminal constructivo—que surja de una acción civil y esté dirigido contra una o más de las partes en dicha acción— constituye o no un 'procedimiento especial', tal como dicho término se usa en el artículo 295 del Código de Enjuiciamiento Civil. Pero véase 4 Bancroft's Code Practice and Remedies 3716, sección 2895.

"Puede admitirse que un desacato criminal en esta jurisdicción no es ni un *misdemeanor* ni un *felony*. No es necesario que el cargo se formule mediante denuncia o acusación. Pueden surgir casos en los cuales debe establecerse alguna distinción entre un procedimiento por desacato criminal y un proceso criminal. Sin cerrar las puertas a una investigación ulterior, no estamos ahora preparados para decir que un procedimiento de desacato criminal no constituye un proceso criminal, dentro del significado de este término, tal como se usa en el artículo 345."

Por lo que respecta a la comparecencia del fiscal del distrito en el procedimiento de desacato, nada aparece de los autos, y si se toma como cierto lo alegado por el mismo peticionario en cuanto a que el fiscal compareció por haber sido instruído para ello, no vemos cómo pueda producir dicha comparecencia la nulidad del procedimiento.

Tampoco está bien fundado el segundo motivo, a saber, que la sentencia impugnada es nula porque no se consigna en ella la fecha y el lugar de la comisión del desacato. El peticionario sostiene que así lo exige la ley vigente sobre la materia—Leyes de 1906, pág. 32.

Lo que la ley de 1906 invocada exige es que "Siempre que alguna persona fuere multada o encarcelada por desacato a una corte deberá firmarse por el juez sentenciador una orden o mandamiento para dicha multa o prisión, consignándose en el mismo el acto o actos constitutivos de dicho desacato, así como la fecha y lugar de esa comisión y circunstancias· de la misma, con especificación de la sentencia del

tribunal, sin lo cual dicha sentencia quedará enteramente nula y sin efecto.'' Código Penal, ed. 1937, pág. 87.

Se trata, pues, de dos documentos diferentes, la sentencia y el mandamiento, y es en el último que la ley expresamente exige que se consignen la fecha y el lugar de la comisión del desacato, no en el primero o sea en la sentencia, como pretende el peticionario. Sólo se ha dictado hasta ahora la sentencia. El mandamiento no ha llegado aún a expedirse. El procedimiento quedó suspendido a virtud del *certiorari*.

■ La equivocación hecha resaltar en el tercer motivo fué cometida. El memorándum no fué dirigido al Dr. Emerson si que al Procurador General de Puerto Rico. Pero esa equivocación no produce la nulidad de la sentencia porque es lo cierto que copia del dicho memorándum dirigido al Procurador General fué remitida al juez de distrito que dictó la orden para mostrar causa, conteniendo dicha copia una nota al pie indicativa de haberse remitido otra al Dr. Emerson. El memorándum cuya paternidad acepta el peticionario habla por sí mismo. Y la sentencia es clara sobre el particular.

■■ El cuarto motivo levanta la cuestión de que no existe ley que castigue como desacato los hechos imputados al peticionario.

Los razonamientos que contiene la opinión del juez sentenciador constituyen una contestación suficiente. No hubo error.

''El poder,'' se dice en 12 Am. Jur. 418–420, resumiendo la jurisprudencia, ''para imponer castigo a las personas culpables de desacato a la corte, puede considerarse como un elemento esencial de la autoridad judicial. Este poder es poseído como una parte de la autoridad judicial conferida a las cortes creadas por la Constitución de los Estados Unidos o por las constituciones de los distintos estados. Es un poder que se dice inherente a todas las cortes de jurisdicción general, ya sean éstas estatales o federales; tal poder existe

en las cortes de jurisdicción general independientemente de cualquier concesión estatutaria especial o expresa. En muchos casos, la facultad de ciertas cortes o tribunales para castigar por desacato es expresamente conferida por estatuto, pero tal autorización estatutaria es innecesaria en lo que concierne a las cortes de jurisdicción general y nada añade a su poder, aunque en relación con las cortes inferiores, la autoridad estatutaria puede ser necesaria para darles poder para actuar. Si la corte es una de jurisdicción general, la manera como se le denomina o la rama de la justicia que ella administra no es relevante. Su jurisdicción puede ser civil o criminal, en ley o en equidad. De cualquier manera, tiene necesariamente poder para castigar por desacato si es una corte de récord o de jurisdicción general. Si la corte no cae dentro de ninguna de estas clasificaciones puede sin embargo ejercitar el poder para castigar por desacato si es una corte mencionada en la Constitución y a la que ésta le ha conferido poder para ejercer funciones judiciales en casos de la naturaleza de aquél en el que asume actuar, sujeta a las restricciones y condiciones que puedan prescribirse por estatuto. Aunque el nombre de una corte no es siempre un índice exacto de sus características esenciales o de su rango en la organización judicial, y cortes de un mismo nombre a veces varían considerablemente en estos respectos, generalmente las cortes estatales, de circuito, de distrito, superiores y cortes de *'common pleas,'* son cortes de jurisdicción general y por tanto poseen poder inherente para castigar por desacato. Usualmente, los más altos tribunales estatales y las cortes intermedias de apelación tienen poder inherente para castigar desacatos de cualquier clase y naturaleza. En algunos estados las cortes de cancillería (*chancery*) o de equidad tienen poder inherente para castigar por desacato; en otros, sin embargo, tal poder es estatutario. Las *'county courts'* tienen generalmente poder inherente y estatutario para castigar los desacatos.''

■ Sostiene por último el peticionario en su quinto motivo que aquí se trata de una comunicación privilegiada. No tiene mérito su contención.

El peticionario no se limitó a dirigir el memorándum al Procurador General, si que envió copias al Dr. Emerson y al juez mismo encargado de la tramitación del litigio, con el evidente propósito de influir en la resolución del mismo.

El memorándum es de tal manera injurioso y amenazador que no es necesario que nos detengamos a particularizar las injurias y amenazas que contiene. Surgen profusamente, sin rodeos, a diestro y siniestro, de las partes del mismo que se transcriben en la orden para mostrar causa.

■ Con respecto al peso de la prueba, bastará decir que estamos actuando dentro de un procedimiento de *certiorari* en el que sólo nos toca investigar si la corte actuó o no con jurisdicción o si se siguió o no el debido procedimiento de ley. La apreciación de la evidencia corresponde al juez sentenciador.

Por virtud de todo lo expuesto *procede la anulación del auto y la devolución del expediente a la corte de su origen para que continúe los procedimientos de acuerdo con la ley,* pero nos parece oportuno decir además que a nuestro juicio del poder para castigar por desacato sólo debe hacerse uso en casos verdaderamente justificados cuando así lo exijan los fines de la justicia.

La mejor práctica a seguir es ignorar las ofensas personales que puedan inferirse a los jueces, confiando éstos en que su actuación serena, firme y sin prejuicios, y la resolución última del caso basada estrictamente en los méritos del mismo, constituirán una vindicación más efectiva que la condena directa del ofensor.

Es cuando el desacato tiende a obstruir y en efecto obstruye la debida administración de la ley, cuando se altera el orden o se desobedece el mandato del tribunal, que los jueces deben actuar sin demora. Entonces su actuación se impone

como algo necesario y ejerce una influencia saludable en el seno de la sociedad que se da·cuenta exacta de que las cortes, baluarte de los derechos del ciudadano, no sólo dan a cada uno lo que es suyo, si que tienen poder para realizar su misión venciendo los obstáculos que puedan presentársele castigando perentoriamente a aquéllos que los crean.

Por el contrario, cuando al desacato se recurre con demasiada frecuencia por injurias personales a los jueces, aunque técnicamente se tenga razón al castigar al delincuente, en vez de fortalecerse el prestigio de las cortes en la conciencia social, se debilita, y la extraordinaria facultad de convertirse en juez y parte que el ejercicio del poder implica, produce más bien la impresión del uso de un privilegio que la del cumplimiento de un deber.

El Juez Asociado Sr. Todd, Jr., no intervino.