EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>    Hon. Nilda Cruz Aponte | 2003 TSPR 51<br><br>158 DPR |

Número del Caso: AD-2000-01


Fecha: 7 de abril de 2003


Oficina de Administración de los Tribunales:

> Lcda. Janet Cortés Vázquez
> Lcda. Aida Juarbe de Meléndez
> Lcda. Belma Lizz Cruz Serrano
> Lcda. Adymara Rodríguez Rodríguez
> Lcdo. Reinaldo González Colón
>    Oficina de Asuntos Legales

Abogados de la Parte Querellada:

> Lcdo. Víctor Ramos Acevedo
> Lcdo. Felipe Benicio Sánchez
> Lcdo. Jenaro Marchand

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Nilda Cruz Aponte

AD-2000-01

Opinión del Tribunal emitida por la Jueza Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 7 de abril de 2003

Nos corresponde determinar si, bajo las circunstancias de este caso, la Jueza Nilda Cruz Aponte actuó en contravención a los Cánones de Ética Judicial al hallar incursa en desacato a la querellante Ivette Suárez Meléndez.

I

La investigación que culminó con la querella de epígrafe tiene su génesis el 17 de septiembre de 1999, cuando la Directora Administrativa de los Tribunales, Lcda. Mercedes Marrero de Bauermeister, instruyó a la Oficina de Asuntos

Legales de la Administración de los Tribunales (en adelante OAT) para que citara a la señora Suárez Meléndez con relación a una información publicada en la prensa referente a una orden de arresto por desacato emitida por la Jueza Cruz Aponte contra la señora Suárez Meléndez. Luego de que la OAT entrevistara a esta última, presentó una queja contra la Jueza Cruz Aponte. Ésta se desempeña como jueza municipal desde mayo de 1995. A partir de entonces ha trabajado en las salas de Aibonito, Coamo, Guayama, Cayey, Caguas, San Lorenzo, Gurabo y Juncos.

Conforme a lo establecido en las Reglas de Procedimiento para Acciones Disciplinarias y de Separación por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones de Puerto Rico (en adelante Reglas de Procedimiento), 4 L.P.R.A. Ap. XV-A, el 6 de octubre de 1999 se le envió a la Jueza Cruz Aponte copia de la queja y se le concedió un término de treinta (30) días para que expusiera su versión de los hechos. Luego de haberse recibido dicha versión, el Presidente de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones de Puerto Rico (en adelante la Comisión), Lcdo. Daniel E. López Pritchard, designó a la Comisionada Lcda. Aida Nilda Molinary de la Cruz para que examinara el informe y determinara si había

causa para iniciar un procedimiento disciplinario. El 28 de febrero de 2000 la Comisionada Molinary de la Cruz determinó la existencia de causa probable contra la Jueza Cruz Aponte.

La Comisión radicó la correspondiente querella el 7 de abril de 2000, imputándole a la Jueza Cruz Aponte la comisión de conducta impropia constitutiva de violación al Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A. Tomo I, y a los Cánones I, II, XI, XVI y XVII de Ética Judicial, 4 L.P.R.A. Ap. IV-A. La querellada radicó su contestación en la cual negó todos los cargos y alegó que la querella pretendía intervenir indebidamente con una determinación judicial.

Celebrada la vista evidenciaria correspondiente, la Comisión rindió un informe en el cual estableció las siguientes determinaciones de hechos:

> 10. El 14 de septiembre de 1999, como a las 3:30 p.m., la señora Suárez [Meléndez] llamó al Tribunal Municipal de Juncos y habló con la señora Janet [Á]lamo, secretaria del tribunal. En voz alta, y bastante molesta y alterada, le dijo a la señora [Á]lamo que ella había enviado al tribunal a un paciente que tenía tendencias homicidas para obtener una orden de ingreso bajo la Ley #116 y que ésta le había sido negada. La secretaria le explicó que la juez[a] pedía siempre un referido médico y que la persona en cuestión no lo había traído. La señora Suárez [Meléndez], todavía en tono alto, le dijo que la ley [sic] no procedía así; que la Juez[a] no sabía nada de la ley; que en aquel caso no se necesitaba el referido médico; y que le iba a dejar su nombre y su teléfono para que la Juez[a] la llamara porque ella podía orientarla. La señora Suárez [Meléndez] habló tan alto que la señora [Á]lamo tuvo que separarse del oído el auricular del teléfono.

. . . .

13. Minutos más tarde, como a las cuatro de la tarde, la Juez[a] Cruz Aponte llamó al número telefónico que la querellante había dejado con la secretaria y solicitó hablar con la trabajadora social Suárez Meléndez. Esta contestó el teléfono y se desarrolló una conversación en la que ambas se alteraron y se alzaron la voz.

La Juez[a] inició la conversación diciéndole, en tono hostil, a la señora Suárez [Meléndez] lo siguiente: "Entiendo que tú llamaste a mi tribunal, para orientarme. ¿Quién eres tú para orientarme a mí?" La señora Suárez [Meléndez] se molestó y le dijo que ella era una trabajadora social, con maestría, y que tenía un paciente al que se le había negado la Ley #116. La Juez[a], en el mismo tono hostil, le dijo que para expedir la orden hacía falta un referido médico. La señora Suárez, todavía molesta, le contestó que no, que no hacía falta y empezó a hablar sobre la condición médica del paciente. La Juez[a] entonces le dijo que ella (la trabajadora social) no era doctora y que no tenía la preparación ni la capacidad profesional para atender aquel tipo de caso. La señora Suárez [Meléndez] alzó la voz y "habló por encima de la voz de la Juez[a]" y le preguntó: "¿Usted sabe lo que es un paciente esquizofrénico?" La Juez[a], usando un tono alto de voz, le dijo: "No, yo no sé. Yo no soy doctora, pero tú tampoco eres doctora."

En eso, el peticionario de la orden de ingreso involuntario se acercó a la trabajadora social y la responsabilizó por lo que pudiera ocurrirle al paciente. La señora Suárez [Meléndez], en tono alto, le dijo: "Yo no; la responsable será la Juez[a]". La querellada escuchó esto, se alteró y dijo molesta: "Quiero hablar con tu supervisora". La señora Suárez [Meléndez] en tono también molesto le contestó: "Usted puede hablar con el que usted quiera". La Juez[a] le preguntó, también molesta: "¿Qué es lo que tú dices? La señora Suárez [Meléndez] en el mismo tono de voz, le volvió a decir: "Que usted puede hablar con el que usted quiera". La Juez[a] le expresó que en aquel momento estaba ordenando su arresto. Véase Informe

Enmendado de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones de Puerto Rico (en adelante Informe Enmendado), págs. 34-36.

Una vez finalizada la conversación telefónica, la querellada ordenó que la señora Suárez Meléndez fuera arrestada por desacato. Esta última fue detenida el mismo día y trasladada al Tribunal de Primera Instancia, Sala Municipal de Juncos. Al llegar al tribunal, la querellada vio a la señora Suárez Meléndez y le manifestó: "¿Usted es Ivette Suárez [Meléndez]? Tiene 30 días en la cárcel. Así no se trata a ningún ser humano y menos a una juez[a]." Véase Informe Enmendado, en la pág. 37. La señora Suárez Meléndez pasó la noche en la Cárcel para Mujeres en Vega Alta. Al día siguiente se celebró una vista con relación a un recurso de habeas corpus radicado por la señora Suárez Meléndez. Dicho recurso fue declarado con lugar y la Jueza Superior Carmen Vargas Medina de la Sala de Caguas, ordenó su excarcelación. El 1 de noviembre de 1999 la Jueza Vargas Medina desestimó los cargos por desacato que pesaban sobre la querellada.

Analizada la prueba desfilada en la vista celebrada ante la Comisión, ésta determinó que la querellada infringió los Cánones I, II, XVI y XVII de Ética Judicial, supra. Los cargos por violación al Art. II, Sec. 7 de la Constitución del Estado Libre Asociado de Puerto Rico y al Canon XI de Ética Judicial fueron

desestimados. La Comisión recomendó que la querellada fuera suspendida de empleo y sueldo por un término no menor de seis (6) meses.

El 14 de noviembre de 2001 la querellada radicó ante nos una moción de desestimación, amparándose en los siguientes fundamentos: (1) el Presidente de la Comisión, licenciado López Pritchard alegadamente estaba incapacitado para presidir los procedimientos ya que "no oye, no ve, ni entiende", por lo cual su actuación vició de nulidad el procedimiento; (2) los Comisionados José Emilio Motta y Enid Martínez Moya demostraron prejuicio y parcialidad contra la querellada; y (3) alegadamente hubo ausencia de prueba ya que en la presente querella se estaba dilucidando una actuación judicial, revisable sólo por los tribunales de justicia y no por el foro disciplinario.[1]

Examinada la prueba documental desfilada ante la Comisión y la transcripción de la vista, así como los argumentos de las partes, estamos en posición de resolver y así procedemos a hacerlo.

II

La Constitución del Estado Libre Asociado de Puerto Rico, en su Art. V, Sec. 13, L.P.R.A., Tomo I, confiere

---

[1] La parte querellada anteriormente radicó tres (3) mociones solicitando la desestimación de la querella por el último fundamento y todas fueron declaradas sin lugar.

autoridad a este Foro para llevar a cabo los procedimientos disciplinarios relacionados con los jueces del Tribunal de Primera Instancia y del Tribunal de Circuito de Apelaciones. Al amparo de tal autoridad, este Tribunal aprobó los Cánones de Ética Judicial que constituyen normas mínimas de conducta que todo juez o jueza debe observar fielmente para mantener la fe del Pueblo en la justicia. 4 L.P.R.A. Ap. IV-A C. 26. Las personas encargadas de esta alta encomienda deben estar sujetas a estrictas normas de conducta que las hagan acreedoras de la confianza de los conciudadanos. Conferencia Judicial de Puerto Rico, La Judicatura Puertorriqueña, 1981, pág. 147.

A la querellada de marras se le imputa haber incurrido en conducta impropia contraria a los Cánones I, II, XVI y XVII de Ética Judicial, supra. El Canon I es un precepto amplio y general que establece la máxima que requiere de todos los jueces y juezas honestidad e imparcialidad. No basta con tener dichas cualidades, sino que las mismas deben exhibirse tanto en la vida pública como en la privada.[2] **"Las obligaciones impuestas**

_____

[2] El Canon I establece:

La fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.

En el ejercicio de su delicada función, aquellas personas llamadas a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de

**por este canon aplican tanto a la conducta profesional como a su vida personal.**" Rafael J. Torres Torres, Cánones de Ética Judicial de Puerto Rico, Comentarios, Forum 1-4, octubre 1993, pág. 7. De acuerdo con el Canon II, aunque la figura del juez o jueza está revestida de autoridad, ésta no debe utilizarse indebidamente dentro o fuera del tribunal.[3] La referida disposición va dirigida a evitar que un juez o jueza tome decisiones ensoberbecido por el poder. Id. en la pág. 8.

Por su parte, el Canon XVI requiere que el juez o jueza al llevar a cabo el ejercicio de sus funciones dicte cátedra de respeto a la dignidad del ser humano mediante el trato cortés a todas las personas que ante él o ella comparezcan.[4] Id. en las págs. 20-21.

---

su misión, deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura.

[3] El Canon II, en lo pertinente, reza: "Para el cabal desempeño de sus funciones, la Jueza o el Juez debe ser laborioso, prudente, sereno, imparcial y cuidadoso en la interpretación de la ley, estar consagrado al estudio del Derecho y ser diligente en el empeño de descubrir los hechos esenciales de cada controversia."

[4] De acuerdo con esta disposición, todo miembro de la Judicatura:

[D]ebe ser considerado y respetuoso con los abogados y las abogadas, especialmente con aquellas personas que comienzan a ejercer la profesión. Ha de serlo también con los o las testigos, jurados, funcionarios o funcionarias del tribunal y todos los que comparezcan ante él o ella. Sin embargo, debe evitar atenciones desmedidas hacia estas personas.

Finalmente, de acuerdo con el Canon XVII, el juez o jueza está obligado a mantener el orden y el decoro en el tribunal a través de su propia conducta. Se prohíbe a los jueces y juezas utilizar indebidamente su autoridad.[5] Conforme este precepto, los jueces o juezas deben utilizar el desacato como última alternativa para vindicar la dignidad del tribunal ya que el uso

---

Velará, además, por que los abogados y las abogadas y los otros funcionarios o funcionarias o empleados o empleadas del tribunal bajo su dirección mantengan igual conducta.

[5]    La citada norma establece:

El Juez o la Jueza dirigirá los trabajos del tribunal con orden y decoro y estará alerta contra todo proceder que pueda afectar la dignidad y el respeto debidos al tribunal. Intervendrá para impedir cualquier conducta impropia de las partes, los abogados y las abogadas o cualquier otra persona, y tomará la acción que en su discreción proceda de acuerdo con la ley, los Cánones de Ética Profesional y las mejores tradiciones del sistema judicial.
En el curso de los procedimientos judiciales, el Juez o la Jueza mantendrá su actitud general, sus manifestaciones y el tono de su voz dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas. Tampoco hará comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios, expresiones o gestos que envuelvan burla o mofa; ni ridiculizará de modo alguno a los abogados o las abogadas, las partes, los o las testigos, funcionarios o funcionarias del tribunal o a otras personas que a él o a ella acudan.

Cuando sea necesario, el Juez o la Jueza podrá elogiar o censurar la conducta de los abogados y las abogadas pero, hasta donde sea posible, deberá hacerlo desde el estrado o en sus resoluciones o sentencias y siempre con la debida moderación y ecuanimidad.

indiscriminado de este instrumento equivaldría a una falta de temperamento judicial. Id. en la pág. 21. Conviene enfatizar que los recién mencionados Cánones no se refieren a un comportamiento ideal, "sino a las obligaciones más elementales que deben cumplir los encargados de ejecutar nuestro sistema de justicia". In re: Hon. Roger Ferrán Quintana, res. el 28 de junio de 2002, 157 D.P.R. _____ (2002), 2002 T.S.P.R. 93, 2002 J.T.S. 92.

Debido a que la presente querella está relacionada con la actuación de una Jueza al imponer una pena de treinta (30) días de cárcel por desacato, pasaremos a examinar dicha figura jurídica.

III

Constituye desacato cualquier acto o conducta que tienda a impedir u obstruir la administración de la justicia por un tribunal o que menoscabe la autoridad o dignidad del mismo. Santos Primo Amadeo, El poder de los tribunales en Puerto Rico para castigar por desacato, 1961, pág. 5. Su origen se sitúa en los tribunales de equidad, que eran presididos por el confesor del rey o un alto clérigo. La herramienta fundamental de dichos tribunales era encarcelar o multar a quienes desobedecieran sus determinaciones. Roberto Molina

Pasquel, Contempt of Court; Correcciones disciplinarias y medios de apremio, 1954, pág. 27.

El desacato "es un procedimiento sui generis que exige la inmediata intervención de la corte y en el que siempre se ha reconocido al propio juez desacatado la facultad de intervenir". Pueblo v. Torres, 56 D.P.R. 605, 623 (1939). La característica esencial del desacato es que siempre la parte perjudicada será el tribunal. Pueblo v. Santiago Agricourt, 147 D.P.R. 179, 208 (1998). El propósito de este procedimiento es vindicar la dignidad y autoridad del tribunal. Mediante la imposición del desacato no se persigue vindicar la persona del juez o jueza agraviado.

Puede incurrirse en desacato de forma directa o indirecta. El desacato se cometerá directamente cuando la acción u omisión lesiva a la administración de la justicia se cometa en presencia del tribunal. Por otra parte, se incurrirá en desacato indirecto o constructivo cuando la conducta que obstruya la debida administración de la justicia ocurra a distancia del tribunal y fuera de su inmediata presencia. Molina Pasquel, supra, a las págs. 65-66.

Un acto constitutivo de desacato directo o constructivo puede ser civil o criminal. "El desacato civil consiste de la imposición de una penalidad por un tiempo indefinido, sujeta a que la persona cumpla con una orden u obligación primaria que forma parte de la acción

civil principal." Dora Nevares-Muñiz, Sumario de derecho procesal penal puertorriqueño, 1995, 4ta ed., pág. 239. La imposición de desacato civil persigue lograr el cumplimiento de una orden emitida por el tribunal. El desacato criminal, por su parte, aplica a conducta constitutiva de delito. El mismo se impone para vindicar la dignidad del tribunal y conlleva una pena de reclusión o multa. Id. La naturaleza del procedimiento, penal o civil, no determina la naturaleza del desacato. Por lo tanto, se puede cometer un desacato civil dentro de un procedimiento criminal y viceversa. Pueblo v. Lamberty, 112 D.P.R. 79, 82 (1982).

Como previamente este Tribunal ha establecido, son múltiples las fuentes de la facultad para castigar por desacato. Id. en la pág. 81. La Regla 40.9 de Procedimiento Civil, 32 L.P.R.A. Ap. III, reglamenta el desacato civil. El artículo 235 del Código Penal de Puerto Rico, 33 L.P.R.A. § 4431, y la Ley de Desacato, Ley de 1 de marzo de 1902, según enmendada, 33 L.P.R.A. §§ 517-518, tipifican la conducta que será considerada como desacato. Por su parte, la Regla 242 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, respectivamente, establece el tipo de conducta clasificada como desacato criminal directo e indirecto. Además, en nuestra jurisdicción se reconoce el poder inherente de los tribunales para castigar por desacato. De Torre v. Corte, 58 D.P.R. 515, 525 (1941); Pueblo v.

<u>García Rivera</u>, 103 D.P.R. 547, 551 (1975). <u>Pérez Pascual v. Vega Rodríguez</u>, 124 D.P.R. 529, 535 (1989).

IV

La Jueza querellada ordenó el arresto de la señora Suárez Meléndez por haber incurrido alegadamente en el delito de desacato criminal. La señora Suárez Meléndez fue condenada sumariamente a la luz de la Regla 242(a) de Procedimiento Criminal, <u>supra</u>. El artículo 235 del Código Penal de Puerto Rico establece, en lo pertinente, que será culpable por el delito de desacato cualquier persona que:

> (a) Perturbare el orden, causare ruido o disturbio o se condujere en forma desdeñosa o insolente hacia un tribunal de justicia o un magistrado **durante el desarrollo de una investigación judicial o una sesión tendiendo con ello directamente a interrumpir los procedimientos o menoscabar el respeto debido a su autoridad, o en presencia del jurado mientras esté en estrados o deliberando en alguna causa.** 33 L.P.R.A. § 4431. (Énfasis suplido.)

La conducta constitutiva del delito de desacato, conforme a la recién citada disposición, debe interrumpir los procedimientos llevados a cabo en los tribunales de justicia y menoscabar el respeto debido a la autoridad judicial. Nevares-Muñiz, <u>supra</u>, a la pág. 240. Para castigar a una persona por desacato sumario deberá cumplirse con los requisitos establecidos en la Regla 242(a) de Procedimiento Criminal, <u>supra</u>, la cual dispone:

> El desacato criminal podrá castigarse en forma sumaria siempre que el juez certifique

que vio u oyó la conducta constitutiva de desacato y que se cometió *en presencia del tribunal*. La orden condenando por desacato expondrá los hechos y será firmada por el juez, dejándose constancia de ella en las minutas del tribunal. (Énfasis suplido.)

Este procedimiento sumario es una excepción a las garantías establecidas en la Carta de Derechos de nuestra Constitución ya que el mismo ha antepuesto el interés de mantener el decoro, el orden y la integridad del proceso judicial. Pueblo v. Susoni, 81 D.P.R. 124, 156 (1959). Conviene recordar nuestra decisión de Pueblo v. Susoni:

> El extraordinario poder de castigar sumariamente, sin ser oído el perjudicado, puesto en manos de los jueces como medio eficaz de mantener el orden y la integridad del proceso judicial, ha de ejercerse con la mayor prudencia, circunspección y sentido de buen juicio, no vaya a ocurrir que se convierta, además de en un vehículo de opresión, en un instrumento destructivo del propio orden e integridad del proceso que la ley quiso mantener. Id. en las págs. 157-58.

**El requisito esencial de la Regla 242(a) de Procedimiento Criminal**, supra, **es que la conducta constitutiva de desacato ocurra en presencia del tribunal**. Al determinar si se está en presencia del tribunal, se ha establecido que el tribunal no consiste solamente del juez o jueza, la sala, el jurado o el salón de deliberaciones. Más bien el tribunal está compuesto por una combinación de todos estos elementos. El tribunal está presente "dondequiera que alguno de sus elementos constitutivos se encuentre entregado a

[su] labor...". <u>Pueblo v. Torres</u>, 56 D.P.R. 605, 612 (1939).

En ocasiones anteriores hemos tenido la oportunidad de pronunciarnos respecto al alcance de la frase "en presencia del tribunal". En <u>Pueblo v. Torres</u>, <u>supra</u>, resolvimos que la agresión de la cual fue víctima un juez cuando la sesión del tribunal había sido suspendida, mientras salía de su despacho y caminaba por el pasillo contiguo a la sala del tribunal, configuró un desacato en la inmediata presencia del tribunal. Años más tarde, en <u>Pueblo v. Valldejuli</u>, 59 D.P.R. 119 (1941), determinamos que se cometió desacato en presencia del tribunal al exponerle a un juez una relación de hechos falsos, aun cuando la exposición se hizo en la oficina del magistrado y el tribunal no se encontraba en sesión. Otro ejemplo de la comisión de desacato en presencia del tribunal es una agresión física de un abogado a otro, en el edificio del tribunal, al terminar la sesión y mientras los jueces estaban reunidos en consulta ya que el acto violento fue motivado por un informe que minutos antes había rendido el abogado agredido en relación con el caso que había quedado sometido a la determinación del tribunal. <u>In re: Castro Martínez</u>, 52 D.P.R. 139 (1945). A contrario sensu, hemos resuelto que la agresión física que inflige un demandado al abogado de la parte demandante, frente a la oficina del agredido,

no configura desacato en presencia del tribunal. Las anteriores decisiones reflejan una tendencia a limitar el concepto en presencia del tribunal. Dicha limitación surge de la decisión del Tribunal Supremo federal en Nye v. U.S., 313 U.S. 33 (1941), donde esa Curia estableció que para que se considere que ha ocurrido desacato en presencia del tribunal se requiere cercanía en términos geográficos. La conducta que obstruye la administración de la justicia tiene que llevarse a cabo en la vecindad del tribunal y no basta una mera relación entre la conducta y el proceso judicial. Id. en las págs. 815-816.

A la luz de la normativa expuesta, examinemos los hechos en los cuales se fundamenta la querella de epígrafe para determinar si la Jueza Cruz Aponte incurrió en conducta impropia, infringiendo de esta manera los Cánones de Ética Judicial.

V

**Reiteradamente hemos establecido que hay profesiones cuyo ejercicio no permite términos medios. Esto sucede con la función judicial donde se requiere que el juez o jueza conserve la rectitud de su conducta dentro y fuera del tribunal.** In re: Nevárez Zavala, 123 D.P.R. 511, 524 (1989). Uno de los factores que más puede contribuir a elevar o erosionar el respeto de las personas ante los miembros de la Judicatura es el

trato que les dan los jueces y juezas a las personas que comparecen ante ellos. Luis Mariano Negrón Portillo, Ética y disciplina judicial, 1987, a la pág. 136. Los jueces y juezas tienen la responsabilidad, juntamente con los abogados, de preservar la dignidad de los procedimientos judiciales mediante la observación de normas de urbanidad y respeto mutuo que propendan a evitar cualquier lesión a la solemnidad que requiere la administración de la justicia. In re: Andréu Ribas, 81 D.P.R. 90, 121 (1959). "En nuestra sociedad el Juez y los Tribunales son vistos como modelos de seriedad y respeto, responsabilidad y sobriedad." Negrón Portillo, supra, pág. 136. Mediante su conducta irreprensible los miembros de la Judicatura logran el fin último de los Cánones de Ética Judicial, que es mantener la fe del pueblo en la justicia.

¿Puede un ciudadano confiar en un juez o jueza que demuestra una actitud hostil ante una consulta? ¿Demuestra sobriedad el carácter de dicho juez o jueza? La querellada de autos sostuvo una conversación telefónica con la señora Suárez Meléndez relacionada con una solicitud para obtener una orden de ingreso involuntario de acuerdo con el Código de Salud Mental, supra. Conforme surge de la transcripción de la vista, en todo momento la querellada estuvo alterada y se

dirigió a la querellante en un tono de voz alto.[6] Esta conducta resulta contraria a los Cánones XVI y XVII de Ética Judicial ya que con su actitud airada demostró falta de consideración y respeto hacia la persona que acudió a ella impulsada por la gravedad de un paciente psiquiátrico.

Aunque los Cánones XVI y XVII han sido integrados en el acápite "C. Del comportamiento en sala",[7] conviene reiterar que las normas de conducta exigidas a los jueces y juezas en los Cánones de Ética Judicial aplican al comportamiento de los miembros de la Judicatura en el ámbito de su vida privada y no exclusivamente al estar detrás del estrado. Los Cánones XVI y XVII van dirigidos a prohibirles a los jueces actitudes y lenguaje insolente respecto a las personas que se acercan a ellos en virtud del cargo que ejercen. La querellada demostró falta de circunspección e impaciencia excesiva en su trato con la señora Suárez Meléndez ya que la reacción airada ocurrió

---

[6] Véase Transcripción de Vista en su Fondo, In re: Hon. Nilda Cruz Aponte, T.P.I. Sala de Juncos, AD-2000-1, 13 de septiembre de 2000, págs. 42-44, 123-24.

[7] Es necesario señalar que el nombre no hace la cosa y que los acápites incluidos en los Cánones de Ética Judicial son guías generales de interpretación. No puede avalarse una conducta impropia alegando que conforme a la clasificación interna de los cánones son inaplicables las disposiciones que en efecto se han infringido. Las normas deben ser interpretadas más allá de su etiqueta. Hernández Torres v. Hernández Colón I, 127 D.P.R. 448, 463 (1990); Pueblo v. Maldonado, 77 D.P.R. 638, 641 (1954).

en una conversación de apenas tres (3) a cinco (5) minutos, según testificó la propia querellada.[8]

Aunque la querellante acepta que tanto ella como la querellada alzaron la voz en su conversación,[9] ello no exime de responsabilidad a la Jueza Cruz Aponte. "Si bien es cierto que el juez al tratar con público a diario, inevitablemente se encuentra con personas irrespetuosas, afectadas de los nervios o facultades mentales, altaneras e irresponsables, **ello no debe provocar que el Juez descienda al nivel de su interlocutor.**" Negrón Portillo, supra, a la pág. 138. (Énfasis suplido.) Todo juez o jueza debe mantener la calma siempre, incluso ante conducta inapropiada de los abogados, los testigos o las partes. In re: Maldonado Torres, res. el 20 de diciembre de 2000, 152 D.P.R. _____ (2000), 2000 T.S.P.R. 190, 2000 J.T.S. 199. A pesar de que la querellante contribuyó con su actitud a que se generara un ambiente hostil, la provocación no exime de responsabilidad al juez o jueza que tiene que recurrir a alzar la voz o proferir palabras soeces para hacer valer su autoridad ya que esta conducta ofende la dignidad del sacerdocio que ha sido llamado a ejercer. "Es precisamente en el Tribunal de Primera Instancia, donde los ciudadanos tienen un contacto más estrecho con la administración de la justicia, que la obligación de los

---

[8]    Id., 12 de diciembre de 2000, pág. 207.

[9]    Id. en la pág. 44.

jueces de observar una conducta que tienda a conservar la confianza y el respeto que requiere el sistema judicial cobra mayor importancia." In re: Ferrán Quintana, supra; In re: Liceaga, 82 D.P.R. 252, 260-61 (1961).

La querellada no solamente se exaltó excesivamente durante la conversación telefónica, sino que ordenó el arresto de la señora Suárez Meléndez porque ésta alegadamente había incurrido en desacato sumario. De acuerdo con nuestra legislación y la jurisprudencia previamente reseñada, para que proceda la imposición de una penalidad por desacato sumario es necesario que el incidente desdeñoso hacia la autoridad judicial ocurra en presencia del tribunal. Determinar que se está ante la presencia del tribunal durante una conversación telefónica sería darle un significado extremadamente amplio e innecesario a la Regla 242(a) de Procedimiento Criminal, supra. Al ocurrir el incidente que originó la presente querella el tribunal no se encontraba en sesión. Por lo anterior, no podemos avalar la interpretación que la querellada llevó a cabo sobre la Regla 242(a) para encontrar incursa en desacato sumario a la parte querellante y ordenar su arresto.

La querellada se excedió en su autoridad para imponer un castigo por desacato, infringiendo con esta actuación el Canon II de Ética Judicial. Su quehacer demostró falta de serenidad y de cuidado en la interpretación de la ley, principalmente al ordenar el

arresto de la querellante coartando su libertad, que es uno de los derechos más protegidos en nuestro ordenamiento. La señora Suárez Meléndez tuvo que pasar la noche en la Cárcel para Mujeres de Vega Alta. La Jueza Cruz Aponte, al ordenar el arresto de la querellante sin darle oportunidad alguna para excusarse o explicar lo acontecido, dio la impresión de haber utilizado un privilegio en lugar de haber ejercido su autoridad como miembro de la Judicatura.[10]

> La alta y honrosa prerrogativa de ordenar un arresto y restringir la libertad personal del ciudadano con que el Pueblo ha investido a la persona del juez, con exclusión de todo otro funcionario público por elevada que sea su jerarquía constitucional, jamás deberá usarse por el juez para propósito alguno que no sea el de la justicia que él está llamado a impartir. [La querellada] usó indebidamente esa prerrogativa, aun cuando fuera con el propósito de hacer valer lo que, a todas luces equivocada y erróneamente, [ella] creía que eran sus atribuciones de juez[a], máxime cuando invocaba esas atribuciones para satisfacer un deseo personal. In re: Pérez Rodríguez, 91 D.P.R. 219, 224 (1964).

Los jueces y juezas deben ignorar las ofensas personales de las cuales sean objeto. En tales circunstancias, su actuación serena, firme y sin prejuicios logrará vindicar más efectivamente su autoridad que la condena directa del ofensor. De Torre v. Corte, supra, a la pág. 527.

---

[10] Así surge del testimonio de la señora Janet Álamo Cáceres, secretaria de la querellada. Véase id., 12 de diciembre de 2000, págs. 122-23.

A la luz de todo lo anterior, resolvemos que la Jueza Cruz Aponte violó los Cánones I, II, XVI y XVII de Ética Judicial, al comportarse de manera irreflexiva y abusar de su autoridad mediante la imposición de desacato a la querellante, demostrando su carencia de temperamento judicial.

VI

Réstanos analizar los fundamentos aducidos por la parte querellada en su moción de desestimación radicada el 14 de noviembre de 2001. En primer lugar, la querellante alega que el licenciado López Pritchard, Presidente de la Comisión, estaba incapacitado para presidir los procedimientos ya que no podía ver, escuchar y entender adecuadamente. En consecuencia, alega la nulidad de los procedimientos llevados a cabo ante la Comisión.

Luego de haber examinado los incidentes que alegadamente demostraron la incapacidad del licenciado López Pritchard para ejercer sus funciones,[11] según surgen de la transcripción de la vista evidenciaria, encontramos que no le asiste la razón a la querellada. Los hechos ocurridos en la vista demostraron que el

---

[11] De acuerdo con la parte querellada, quedó demostrado que el licenciado no podía entender, ver y escuchar en varios incidentes recogidos en la Transcripción de Vista en su Fondo, 13 de septiembre de 2000, págs. 10, 13, 18-21, 23, 25-26, 83-84, 87, 89-90, 96, 105-06, 113-14, 129-30, 145, 153-54, 159, 165.

licenciado López Pritchard meramente requirió aclaraciones sobre la presencia de algunos testigos y sobre algunas referencias hechas por los abogados de la querellada. Incluso la Comisionada Martínez Moya manifestó que desde el lugar donde estaban ubicados los comisionados en ciertas ocasiones resultaba difícil ver a las personas presentes en la vista.[12] Conviene aclarar que lo anterior no equivale a que los comisionados sufrieran de alguna enfermedad visual que les impidiera observar los procedimientos. Además, de la transcripción de la vista evidenciaria surge que el Presidente de la Comisión estuvo atento a los procedimientos y que demostró las aptitudes necesarias para desempeñar sus funciones.

Como segundo planteamiento, la querellada aduce que los Comisionados Motta García y Martínez Moya demostraron prejuicio y parcialidad en su contra, convirtiéndose en abogados de la querellante y tratando de forma agresiva a los testigos de la parte querellada.

Sabido es que en nuestro ordenamiento se admite la participación activa del juez o jueza en el curso de los procedimientos que ante él o ella se ventilan para lograr el esclarecimiento de la verdad. Regla 43(c)(d) de Evidencia, 32 L.P.R.A. Ap. IV; Pueblo v. Vega, res. el 1 de julio de 1999, 148 D.P.R. _____ (2000), 99 T.S.P.R. 112, 99 J.T.S. 114; Pueblo v. Pabón, 102 D.P.R. 436, 440-

---

[12]   Id. en la pág. 115.

41 (1974). De hecho, los Cánones de Ética Judicial le imponen la obligación a los miembros de la Judicatura de participar como árbitros imparciales en la búsqueda de la verdad. En lo pertinente el Canon XIV, supra, establece:

> El Juez deberá intervenir durante el curso de cualquier procedimiento judicial para evitar dilaciones injustificadas, para esclarecer cualquier extremo o impedir una injusticia. Aunque es función y derecho de los abogados presentar el caso de sus respectivos clientes en la forma más favorable a sus méritos, es ministerio fundamental del Juez velar por que ninguna persona sufra una injusticia. En todo momento y por sobre toda otra consideración, sus actuaciones han de auspiciar el descubrimiento de la verdad como base esencial de la justicia.

De la transcripción de la vista surge que efectivamente los Comisionados Motta García y Martínez Moya llevaron a cabo un rol activo en los procedimientos llevados ante la Comisión. No obstante, su participación se circunscribió a hacerles preguntas a algunos testigos para ampliar aspectos de sus declaraciones con el objetivo de lograr una cabal comprensión del asunto que les correspondía dilucidar. Particularmente, la Comisionada Martínez Moya indagó sobre los hechos en controversia interrogando a varios testigos. El expediente no refleja que los comisionados se dirigieran a los testigos o a la parte querellada de forma agresiva o irrespetuosa. Por el contrario, los abogados de la parte querellada fueron quienes en varias ocasiones utilizaron palabras soeces durante el transcurso de la

vista, conducta altamente censurable. [13]   Además, los abogados de la parte querellada no manifestaron a la Comisión su incomodidad o las muestras de parcialidad con las intervenciones de los Comisionados Motta García y Martínez Moya.  El segundo planteamiento de la querellada resulta inmeritorio.

Finalmente, la parte querellada reproduce un argumento que anteriormente fue declarado sin lugar por la Comisión.  Se alega en la moción de desestimación que hubo ausencia de prueba contra la querellada debido a que la conducta imputada no puede referirse a si la adjudicación del caso es contraria a Derecho porque tal determinación les corresponde a los tribunales y no al foro disciplinario.   La querellada fundamenta su argumento en la Regla 6(b) de Procedimiento, supra, que dispone que no se podrá investigar una queja que "pretenda intervenir impropiamente con determinaciones judiciales".

Como norma general, los jueces y juezas no pueden ser sometidos a un procedimiento disciplinario por percibir erróneamente los hechos o el Derecho aplicable a determinado caso.   Los magistrados también gozan de inmunidad contra demandas en daños y perjuicios por la comisión de un error de hecho o de derecho.  Feliciano Rosado v. Matos, Jr., 110 D.P.R. 550, 565 (1981).  Esta

---

[13]   Para un ejemplo, véase id. en la pág. 22.

inmunidad pretende conservar la independencia judicial, fundamental a nuestro sistema de justicia.

En la querella de autos la Comisión no pasó juicio sobre la determinación final de imponer el desacato sumario que llevara a cabo la Jueza Cruz Aponte. La investigación se concentró en las actuaciones de la querellada en el desarrollo de los acontecimientos que culminaron con el encarcelamiento de la señora Suárez Meléndez. Precisamente los Cánones de Ética Judicial se han aprobado para velar por que los jueces y juezas no abusen de su autoridad en el desempeño de sus funciones. No podemos permanecer retraídos ante una conducta que en nada aporta a la exaltación de la Judicatura puertorriqueña, sino que erosiona su prestigio. El planteamiento de la querellada es improcedente.

En virtud de todo lo expuesto, resolvemos que la Jueza Cruz Aponte actuó en contravención a los Cánones I, II, XVI y XVII de Ética Judicial. En consecuencia, se decreta la suspensión **inmediata** de empleo y sueldo por el tiempo que le queda hasta vencer su término.

MIRIAM NAVEIRA DE RODÓN
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Nilda Cruz Aponte

AD-2000-01

SENTENCIA

San Juan, Puerto Rico a 7 de abril de 2003

Por los fundamentos expuestos en la Opinión que antecede, se dicta sentencia suspendiendo **inmediatamente** de empleo y sueldo por el tiempo que le queda hasta vencer su término a la Jueza Nilda Cruz Aponte.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López, aún cuando entiende que es <u>correcta</u> la determinación del Tribunal a los efectos de que la juez querellada, al actuar como lo hizo, <u>violó</u> las disposiciones de los Cánones I, II, XVI y XVII de Ética Judicial, <u>limitaría</u> la sanción disciplinaria a una <u>censura enérgica</u> a la querellada Nilda Cruz Aponte con un <u>apercibimiento</u> a ésta sobre conducta similar en el futuro; ello en vista de que, si bien es cierto que la referida magistrada <u>incidió</u> al emitir la orden de arresto por desacato sumario, dicha actuación <u>no</u> se dio en el vacío, esto es, fue una provocada por la actitud altanera, irrespetuosa y ofensiva de la trabajadora social y la referida orden fue emitida en el "fragor" de la situación desagradable causada por la mencionada persona, esto es, fue una actuación impensada de la magistrada

que, en nuestra opinión, <u>no amerita la suspensión de empleo y sueldo</u> decretada por la mayoría del Tribunal.


El Juez Asociado señor Rivera Pérez disiente del resultado, por entender que la medida disciplinaria impuesta no guarda proporción con la falta cometida por la querellada, a base de lo resuelto por este Tribunal en <u>In re: Hon. Maldonado Torres</u>, res. el 20 de diciembre de 2000, 152 D.P.R. _____ (2000), 2000 T.S.P.R. 190, 2000 J.T.S. 199, y en <u>In re: Hon. Sheila A. Díaz García</u>, res. el 11 de febrero de 2003, _____ D.P.R. _____ (2003), 2003 T.S.P.R. 13, 2003 J.T.S. 15.


El Juez Asociado señor Corrada del Río disiente de los acápites III, IV y V, por entender que un error cometido por un Juez, como cuestión de derecho, en el descargo de sus funciones judiciales, no es causa para acción disciplinaria.


                                    Patricia Otón Olivieri
                                 Secretaria del Tribunal Supremo