per curiam:
Nos corresponde evaluar la conducta desple-gada por un Juez Superior durante una serie de incidentes ocurridos en el 2006 con el personal de la Rama Judicial en el Tribunal de Primera Instancia, Sala de Comerío, donde *181 se desempeñaba como Juez Administrador Auxiliar. Espe-cíficamente, debemos resolver si el Hon. Pedro Claverol Siaca infringió los Cánones de Etica Judicial en el manejo de una controversia relacionada con el Alguacil Supervisor de dicho tribunal. Tras analizar detenidamente el asunto, concluimos que el juez Claverol Siaca infringió los Cánones 13, 23 y 30 de Ética Judicial, 4 L.P.R.A. Ap. IV-B. No obs-tante, en vista de que el juez Claverol Siaca se disculpó con los funcionarios, y a la luz de su historial profesional en la Rama Judicial, limitamos nuestra sanción a una censura de su conducta.
I
El Hon. Pedro Claverol Siaca prestó juramento como Juez Superior el 2 de octubre de 2000. Luego de ejercer diversas funciones en los tribunales de la isla, en enero de 2005 fue designado Juez Administrador Auxiliar del Tribunal de Primera Instancia, Sala de Comerío. Para esa fecha, el Sr. José J. Ortiz Torres se desempeñaba como Alguacil Supervisor Interino en dicho tribunal, ya que el Alguacil Supervisor, Sr. Ornar Rosa Fuentes, se encontraba desta-cado en Irak cumpliendo sus deberes militares con el Ejér-cito de Estados Unidos.
Al iniciar sus labores en el tribunal de Comerío, el juez Claverol Siaca sostuvo una reunión con el Sr. José O. Me-léndez Rodríguez, Alguacil Regional de la Región Judicial de Aibonito. En esta reunión, el juez manifestó, entre otras cosas, su incomodidad con el hecho de no haber estado in-volucrado en el proceso de selección del Alguacil Supervisor, dado que entendía que se trataba de un puesto que debía ser de la confianza del Juez Administrador Auxiliar y él no conocía al alguacil Rosa Fuentes, quien se encontraba aún en Irak. El alguacil Meléndez Rodríguez le aclaró que el puesto de Alguacil Supervisor no era de confianza y que, al estar el alguacil Rosa Fuentes ausente por licencia mi- *182 litar, cuando regresara tenía que ser reinstalado al puesto que ocupaba antes de marcharse a Irak.
El alguacil Rosa Fuentes se reincorporó a sus funciones como Alguacil Supervisor en febrero de 2006. Intentó en varias ocasiones reunirse con el juez Claverol Siaca para dialogar sobre las expectativas de éste en cuanto a su tra-bajo, mas todos sus intentos en ese sentido fueron infructuosos. Posteriormente, ocurrieron varios incidentes de cierta tensión entre el alguacil Rosa Fuentes y el juez Claverol Siaca relacionados con el curso ordinario de las operaciones del tribunal.
Ante estas circunstancias, el alguacil Rosa Fuentes le comunicó al alguacil regional Meléndez Rodríguez sus pre-ocupaciones por la actitud que supuestamente tomaba el juez Claverol Siaca hacia él. Según el alguacil Rosa Fuentes, en varias ocasiones le había gritado y tratado de ma-nera irrespetuosa. Además, alegó que el querellado rehu-saba reunirse a solas con él y le hacía llegar instrucciones a través de terceras personas. El alguacil Meléndez Rodrí-guez le comunicó dichas preocupaciones a la Directora Eje-cutiva de la Región Judicial de Aibonito, la Sra. Marisol Meléndez Ortiz, y ambos decidieron referir el asunto a la Oficina de Recursos Humanos de la Oficina de Administra-ción de los Tribunales (OAT). Además, la señora Meléndez Ortiz le recomendó al alguacil Rosa Fuentes que se re-uniera con el Juez Administrador de la Región Judicial de Aibonito, el Hon. Rafael Taboas Dávila, para comunicarle lo que estaba sucediendo.
La Sra. Martha Hernández Valentín, Directora de la División de Evaluación de la Oficina de Recursos Humanos de la OAT, también se reunió con el alguacil Rosa Fuentes para discutir sus preocupaciones. Este le relató los inciden-tes ocurridos con el juez Claverol Siaca y manifestó sen-tirse ansioso y preocupado por la situación, apuntando que sufría más tensión que cuando estuvo destacado en Irak. La señora Hernández Valentín le recomendó que llevara *183 una bitácora de los incidentes que sucedieran entre él y el juez Claverol Siaca —fueran buenos o malos— para poder determinar si se trataba de un patrón de conducta o si se trataba de una resistencia al cambio en el puesto de Algua-cil Supervisor.
Así las cosas, el juez Claverol Siaca se personó en una ocasión a la oficina de alguaciles para hablar con una persona. Allí, observó dos libretas en el escritorio del al-guacil Rosa Fuentes, quien no se encontraba. Supuesta-mente, por haber visto su nombre, el querellado ocupó las libretas e informó a los otros alguaciles que sus nombres también aparecían en las anotaciones y les divulgó su contenido. Luego retuvo las libretas.
Posteriormente, la señora Hernández Valentín acudió al tribunal de Comerío para reunirse con el juez Claverol Siaca. En esta reunión también estuvo presente el alguacil regional Meléndez Rodríguez. Al iniciar la reunión, la se-ñora Hernández Valentín le solicitó al juez Claverol Siaca cerrar la puerta, dado el contenido confidencial de la con-versación que iban a sostener. El juez rechazó su petición y expresó, en tono sarcástico, que él no hablaba a solas con nadie y que él no tenía nada que esconder. La señora Her-nández Valentín le indicó que no discutiría asuntos de personal con la puerta abierta, por lo que la reunión no se llevaría a cabo en esas condiciones.
En ese momento, el juez Claverol Siaca procedió a co-municarse telefónicamente con el juez Taboas Dávila para indagar sobre un asunto referente a las asistencias del al-guacil Rosa Fuentes, que no era de conocimiento de la se-ñora Hernández Valentín. La señora Hernández Valentín también habló con el juez Taboas Dávila, le comunicó su incomodidad con la reunión que se estaba llevando a cabo y le solicitó que se coordinara una reunión en el tribunal de Aibonito, a lo cual el Juez Administrador accedió. Luego de finalizada la conversación telefónica, el juez Claverol Siaca le indicó a la señora Hernández Valentín que el alguacil *184 Rosa Fuentes no era de su confianza, pues había incurrido en una conducta con la cual no estaba de acuerdo y que no había seguido sus instrucciones en varias ocasiones. El al-guacil Meléndez Rodríguez reclamó al querellado que no le hubiera comunicado la situación antes, ya que él era el supervisor directo del alguacil Rosa Fuentes.
Tras un intercambio de opiniones entre el alguacil Me-léndez Rodríguez y el juez Claverol Siaca, éste se alteró, gritó, utilizó palabras soeces y amenazó con irse de la re-gión si no se iba el alguacil Rosa Fuentes. Posteriormente, acusó a la señora Hernández Valentín de haber ordenado que lo “carpetearan” y sacó las libretas que había ocupado del alguacil Rosa Fuentes, indicando que éste lo había es-tado siguiendo diariamente por instrucciones de la OAT. Procedió a leer en voz alta fragmentos de lo que estaba escrito en las libretas e indicó que entregaría copia de és-tas a todos los empleados. La señora Hernández Valentín le respondió que esas libretas eran bitácoras que los super-visores llevaban según los adiestramientos provistos por la OAT y que él no podía repartir copias de éstas a los empleados.
Ante esta respuesta, el juez Claverol Siaca expresó que él tenía conocimiento de que en la Rama Judicial “se tapa[ba]n las cosas” y que él sabía cuando mandaban a “carpetear” a las personas. Indicó también, de manera re-tante, que era la Directora Administrativa de los tribuna-les, Hon. Sonia Ivette Vélez Colón, quien debía darle ins-trucciones de devolver las libretas. Al ver su reacción, la señora Hernández Valentín le indicó que ella estaba allí en representación de la Directora Administrativa de los Tribunales, mas ello no causó cambio alguno en la actitud del juez. Durante la reunión, el juez Claverol Siaca profirió lenguaje soez contra el alguacil Meléndez Rodríguez y dis-cutió repetidamente con la señora Hernández Valentín.
Terminada la reunión, la señora Hernández Valentín in-formó lo ocurrido a la Directora Administrativa de los Tri *185 bunales, Hon. Sonia I. Vélez Colón, y se reunió con el juez Taboas Dávila. Les indicó que la reunión había sido poco productiva, tensa y desagradable debido al comporta-miento y a la actitud del querellado. Junto con el juez Ta-boas Dávila, acordaron el traslado del alguacil Rosa Fuentes al Tribunal de Primera Instancia, Sala de Coamo.
Posteriormente, se realizó una reunión en la oficina del juez Taboas Dávila para discutir los asuntos relacionados con los conflictos entre el querellado y el alguacil Rosa Fuentes. En dicha reunión estuvieron presentes el juez Ta-boas Dávila, el juez Claverol Siaca, el alguacil Meléndez Rodríguez, la señora Meléndez Ortiz, la señora Hernández Valentín y el Sr. José Millán, funcionario de la División de Recursos Humanos de la OAT. El juez Claverol Siaca soli-citó que se le permitiera hablar por quince minutos y, du-rante ese período, expresó que no quería que el alguacil Rosa Fuentes continuara laborando en el tribunal de Comerío. Además, relató que conocía a varios funcionarios del Gobierno y a figuras políticas, e insinuó que esa era la razón por la cual la OAT supuestamente estaba persiguiéndolo.(1)
Al surgir nuevamente el tema de las anotaciones reali-zadas por el alguacil Rosa Fuentes en las libretas, la se-ñora Hernández Valentín explicó que a los supervisores se les proveían adiestramientos de documentación para que puedan observar y evaluar el desempeño de sus empleados. El querellado respondió con alegaciones de que la Directora Administrativa de los Tribunales había orde-nado que lo “carpetearan” y que él le entregaría copia de las libretas a todo el personal para que demandaran a la OAT. Además, desafió a la Directora Administrativa de los Tribunales a que le quitara las libretas, alegando que eran *186 suyas al estar su nombre contenido en éstas.(2) Por otro lado, el querellado reiteró que no confiaba en el alguacil Rosa Fuentes y que quería que éste se fuera del tribunal de Comerío. De igual forma, expresó que quería que se nom-brara al alguacil Ortiz Torres como supervisor en sustitu-ción del alguacil Rosa Fuentes, ya que insistía en que el Alguacil Supervisor debía ser una persona de la confianza del Juez Administrador Auxiliar.
Luego de la mencionada reunión, surgieron informes en la prensa radial del país que aludían a la posibilidad de “carpeteo” de jueces y personal administrativo en un tribunal del área central. Específicamente, el reportero indicó que se había encontrado una libreta en el escritorio de un alguacil y que en ésta aparecían datos sobre lo que hacían y con quién hablaban los jueces, las secretarias y otro personal administrativo de un tribunal del área central de la isla. El reportero indicó, además, que no se conocía el pro-pósito del “carpeteo” ni desde cuándo existía, pero que se estaba investigando, y advirtió que podrían presentarse acusaciones y demandas contra el Estado.
Luego de esta serie de incidentes, y tras haber sido tras-ladado al tribunal de Coamo, el alguacil Rosa Fuentes pre-sentó una queja jurada contra el juez Claverol Siaca. Con-cluidos los procedimientos administrativos e investigativos de rigor, el Ledo. Carlos Ramos González, Comisionado Asociado de la Comisión de Disciplina Judicial (Comisión), determinó que existía causa probable para presentar una querella contra el juez Claverol Siaca por posibles infrac-ciones a los Cánones de Etica Judicial. Conforme a ello, la OAT presentó la querella correspondiente, en la cual le im-putó al juez Claverol Siaca diez cargos por violaciones a los Cánones 7, 8, 13, 14, 18, 23 y 30 de Ética Judicial, 4 L.P.R.A. Ap. IV-B.
*187 Según las imputaciones en su contra, el juez Claverol Siaca infringió los Cánones de Etica Judicial al ocupar una libreta del Alguacil Supervisor sin su conocimiento y con-sentimiento, ordenar a sus subalternos a fotocopiarla y divulgar su contenido. También constituyó una conducta con-traria a los Cánones de Etica Judicial ocasionar que se difundiera a través del tribunal información incorrecta so-bre el contenido de la libreta del alguacil Rosa Fuentes y provocar que se filtrara a la prensa y se lacerara la imagen de la Rama Judicial.
El juez Claverol Siaca infringió también los Cánones de Etica Judicial al actuar desconsideradamente en su trato con el alguacil Rosa Fuentes y tomar una actitud maltra-tante hacia él frente a sus subalternos y por retar abierta-mente, a través de funcionarios del tribunal, a la Directora Administrativa de los Tribunales. Igualmente, infringió los cánones al utilizar lenguaje soez y asumir una conducta irrespetuosa, desafiante y amenazante contra los funciona-rios del tribunal en reuniones oficiales, hacer imputaciones falsas e infundadas, e insinuar en reuniones oficiales que conocía a figuras importantes que podían interceder por él.
Por último, se le imputó infringir los Cánones de Ética Judicial al intervenir indebidamente con posibles testigos en el proceso investigativo en su contra, asumir una acti-tud irrespetuosa en el proceso y negarse a tratar de ma-nera confidencial los asuntos de personal, insistiendo en discutirlos abiertamente.
Luego de los trámites procesales correspondientes, se celebró la vista en su fondo ante la Comisión, constituida por su Presidente en Función, el Hon. Flavio Cumpiano Villamor, y las Comisionadas Asociadas, Ledas. Delia Lugo Bougal y Dora T. Peñagarícano Soler. En la vista, las par-tes acordaron someter el caso por los informes y la prueba que obraba en el expediente, por lo que no presentaron prueba testifical. Como parte de los acuerdos a que llega-ron las partes, la O AT recomendó que se impusiera sólo *188 una censura como sanción. Por su parte, el juez Claverol Siaca negó haber incurrido en violaciones éticas, pero soli-citó que, de la Comisión entender lo contrario, se le sancio-nara sólo con una amonestación. Además, durante la vista solicitó dirigirse a la Comisión y a varios de los testigos citados para pedir disculpas a aquellos que se habían sen-tido incómodos u ofendidos por su conducta. (3)
Finalmente, la Comisión rindió su informe y determinó que el querellado había incurrido en violaciones a los Cá-nones 13, 23 y 30 de Etica Judicial, supra. Por ello, reco-mendó la imposición de una censura como medida disciplinaria. Sometido el informe ante nuestra considera-ción, procedemos a resolver.
II
Los Cánones de Ética Judicial constituyen las normas mínimas de conducta que rigen a nuestra Judicatura y sirven de base para guiar el comportamiento de sus miembros, de manera que sea ejemplar y fomente el respeto y la confianza del pueblo en el Sistema Judicial.(4) In re Grau Acosta, 172 D.P.R. 159 (2007). En el preámbulo de dichos cánones se reconoce la importancia de la función judicial y se impone a los jueces el deber y la responsabilidad de aceptar ciertas restricciones a su conducta, tanto en el ámbito de sus funciones judiciales como en otras actividades profesionales y personales. Así, pues, estas limitaciones constituyen sacrificios en su vida pública y privada que tienen el propósito de enaltecer la integridad e independencia de la Judicatura. Además, los jueces tienen la obligación de fomentar y ejercer un trato respetuoso y *189 cordial hacia sus pares, los funcionarios de la Rama Judicial y las personas que comparecen a sus salas.
Del referido preámbulo también se infiere la aplicabili-dad de los Cánones de Etica Judicial, no sólo a las funcio-nes judiciales de los jueces, sino también a su comporta-miento público y privado. Por lo tanto, dada la naturaleza de su función, a los jueces se les exige una conducta ejem-plar en todo momento, dentro y fuera del tribunal. In re Nevárez Zavala, 123 D.P.R. 511, 524 (1989).
Como corolario de lo anterior, el Canon 13 de Etica Judicial, supra, específicamente impone a los jueces el deber de tratar con consideración y respeto a los abogados, a cualquier persona que comparezca ante el tribunal y a los funcionarios de la Rama Judicial. Además, los jueces deben exigir igual conducta de todos éstos ante el tribunal. En esta misma línea, el Canon 14 de Etica Judicial, supra, dispone que los jueces deben evitar mostrar impaciencia o severidad excesiva en los procesos judiciales, y deben abstenerse de hacer comentarios o gestos que puedan interpretarse como burlas o ridiculizaciones a los abogados, a las personas que comparezcan ante el tribunal y a los funcionarios de la Rama Judicial. De la misma manera, deben intervenir para impedir cualquier conducta impropia que lesione la dignidad e integridad del tribunal. Así pues, estos dos cánones en conjunto requieren que los jueces exhiban un trato respetuoso y cordial hacia todas las partes involucradas en los procesos ante el tribunal, incluidos sus funcionarios. Véanse: In re Suárez Marchán, 159 D.P.R. 724 (2003); In re Robles Sanabria, 151 D.P.R. 483 (2000). Asimismo, el deber de los jueces de comportarse éticamente en el ejercicio de las prerrogativas de su cargo se extiende a su vida personal y privada. In re Ramos Mercado, 170 D.P.R. 363 (2007); In re González Acevedo, 165 D.P.R. 81 (2005).
Por su parte, el Canon 8 de Ética Judicial, supra, señala cómo debe ser el carácter de los jueces en sus *190 funciones adjudicativas y les impone el deber de actuar libres de influencias externas directas o indirectas. En este sentido, deberán ser laboriosos, prudentes, serenos e im-parciales, y enmarcar sus funciones adjudicativas en el es-tudio de la ley y en la diligencia para descubrir los hechos esenciales de cada controversia. Además, su conducta de-berá excluir la apariencia de susceptibilidad a influencias políticas, religiosas y públicas o a cualquier otra motiva-ción impropia. Hemos expresado antes que “aunque la fi-gura del juez está revestida de autoridad, ésta no debe uti-lizarse indebidamente dentro o fuera del tribunal. La referida disposición va dirigida a evitar que un juez tome decisiones ensoberbecido por el poder”. (Escolio omitido.) In re Cruz Aponte, 159 D.P.R. 170, 180 (2003).(5)
En cuanto a las actividades extrajudiciales, el Canon 23, supra, impone a los jueces el deber de comportarse públicamente de manera tal que no se dude de su capacidad para adjudicar imparcialmente las controversias judiciales ante su consideración. Además, requiere que las actuaciones de los jueces no deshonren el cargo judicial ni interfieran con el desempeño de sus funciones.
Este canon va dirigido a pautar una norma de conducta general que responde a la alta estima y confianza públicas que gozan los miembros de la Judicatura. Así, pues, se es-pera que los jueces, a través de sus acciones, no lesionen la imagen del Sistema Judicial. Es por esto que la función judicial requiere que los jueces se comporten conforme lo exige su cargo, tanto dentro como fuera del tribunal, y que su comportamiento se dirija a enaltecer el cargo que ocu-pan y fomentar el respeto hacia éste. In re Cruz Aponte, supra; In re Nevárez Zavala, supra.
Por su parte, el Canon 30 de Etica Judicial, supra, prohíbe que los jueces actúen fuera de sala de forma *191 tal que den la impresión de que ejercen o pretenden ejercer urna influencia indebida sobre otros jueces o funcionarios públicos. Tampoco deben dar la impresión de que alguna persona tiene influencia sobre ellos ni deberán influir directa o indirectamente en el ánimo de otros jueces para obtener un trato privilegiado al litigar causas personales. En particular, este canon parte de la premisa de que “en nuestra sociedad el cargo de juez es un cargo especial que proyecta una visión y noción pública destacada, de presti-gio e influencia. Su opinión en y fuera del estrado, goza de una particular autoridad y respeto comunitario”. In re Comunicación Juez Pérez Giménez, 112 D.P.R. 683, 685 (1982). Por lo tanto, los jueces siempre deben ser conscien-tes de su deber de evitar hasta la apariencia de poseer influencia alguna sobre otros jueces o funcionarios, o de que éstos la tengan sobre ellos.
Por otro lado, el Canon 7 de Ética Judicial, supra, establece cómo deberá ser el comportamiento de los jueces ante procedimientos disciplinarios contra cualquier funcionario de la Rama Judicial. Dicha norma señala que los jueces deben promover y cooperar con los procedimientos disciplinarios contra otros jueces, abogados o personal de la Rama Judicial, siempre que tengan conocimiento personal de los hechos sobre los cuales versen éstos, y advierte contra la intervención indebida de los jueces con los testigos, la prueba documental o cualquier otro aspecto del procedimiento disciplinario. Este precepto responde a que los jueces tienen la obligación no sólo de conformar su propia conducta a los más altos estándares éticos, sino de velar por que otros jueces, abogados y personal de la Rama Judicial cumplan con las normas de ética judicial y profesional. Esta norma busca, además, preservar la integridad de los procedimientos disciplinarios e impedir que los jueces intervengan de manera impropia con los testigos o con la evidencia en dichos procedimientos.
Por último, el Canon 18 de Ética Judicial, supra, *192 impone a los jueces el deber de mantener la confidencialidad de la información obtenida en el ejercicio de sus funciones judiciales en aquellos casos en que la ley, los reglamentos, las normas o las órdenes administrativas prohíban su divulgación. Ciertamente, uno de los deberes ineludibles de los miembros de la Judicatura es respetar y cumplir con la ley. 4 L.P.R.A. Ap. IVB, C.l. Así, pues, los jueces deberán cumplir estrictamente con lo dispuesto por nuestro ordena-miento jurídico en cuanto a la confidencialidad de la infor-mación con la cual, por la naturaleza del cargo, entran en contacto. Con estos preceptos en mente, atendamos concre-tamente el caso ante nuestra consideración.
III
Hemos resuelto que este Tribunal no habrá de alterar las determinaciones de hecho de la Comisión de Disciplina de Jueces, salvo en aquellos casos en que se demuestre la existencia de parcialidad, prejuicio o error manifiesto. In re Scherrer Caillet-Bois, 162 D.P.R. 842, 862 (2003); In re Suárez Marchan, supra; In re Hon. Maldonado Torres, 152 D.P.R. 858, 869 (2000); In re Moreira Avillán, 147 D.P.R. 78, 86 (1998). Luego de examinar detenidamente el informe de la Comisión, así como la prueba que obra en el expediente de autos, resolvemos no intervenir con las determinaciones de hecho realizadas por ésta, y concluimos que el querellado incurrió en las violaciones a los Cánones 13, 23 y 30 de Etica Judicial, supra. Veamos.
La Comisión determinó en su informe que existió un ambiente de tensión entre el alguacil Rosa Fuentes y el juez Claverol Siaca desde el inicio mismo de su relación laboral. Ciertamente, el relato de incidentes que se realiza en el referido informe, así como en la prueba documental y en las declaraciones juradas que obran en el expediente de autos, demuestran que la relación de trabajo entre éstos *193 fue difícil desde sus comienzos, situación motivada por la inconformidad del juez Claverol Siaca en torno al proceso de selección y nombramiento del Alguacil Supervisor. Ello provocó que el juez Claverol Siaca se rehusara a reunirse a solas con el alguacil Rosa Fuentes y le diera instrucciones a través de terceras personas, en vez de hacerlo directamente. Incluso, en ocasiones le habló en un tono y lenguaje fuertes que hicieron al alguacil Rosa Fuentes sen-tirse incómodo, ofendido y humillado. Estos incidentes oca-sionaron que el alguacil Rosa Fuentes acudiera a la Divi-sión de Recursos Humanos de la OAT, donde se le orientó sobre las anotaciones que podía llevar, a manera de bitá-cora, para tener constancia de los incidentes que ocurrían entre él y el querellado.
El juez Claverol Siaca supo sobre estas anotaciones y se apoderó de las libretas en las cuales éstas aparecían, sin el consentimiento ni el conocimiento del alguacil Rosa Fuentes. Además, indicó a otros alguaciles que sus nom-bres también aparecían en las libretas, comunicándoles el contenido de éstas. Eventualmente, la divulgación del con-tenido de dichas libretas ocasionó que se difundieran infor-mes en la prensa radial del país, alegando “carpeteo” de jueces y personal del tribunal.(6) Estas alegaciones laceran la imagen de la Rama Judicial y afectan la confianza del pueblo en el sistema de tribunales.
Además de los incidentes ocurridos entre el querellado y el alguacil Rosa Fuentes, su posterior manejo del asunto con el personal de la Rama Judicial que intervino a peti-ción del alguacil, y su comportamiento en las reuniones oficiales relacionadas con éste, demostró falta de tempera-mento judicial. Su conducta irrespetuosa e inadecuada se apartó por mucho de la sensatez y prudencia que exige su *194 cargo. Si el juez entendía que debía manifestar su incon-formidad con el nombramiento o con la labor del Alguacil Supervisor, debió optar por utilizar los canales corres-pondientes.
Como mencionáramos anteriormente, el Canon 13 de Ética Judicial, supra, exige a los jueces que brinden un trato considerado y respetuoso a los funcionarios del tribunal, entre otros participantes del proceso adjudicativo. En el caso de autos, el querellado incurrió en violaciones al referido canon por su comportamiento y expresiones hacia el alguacil Rosa Fuentes, así como por su comportamiento durante las dos reuniones oficiales que se celebraron en su oficina y en la oficina del juez administrador Taboas Dávila. Utilizar un lenguaje soez e irrespetuoso en reuniones oficiales y retar abiertamente a la Directora Administrativa de los Tribunales a través de sus funcionarios, ciertamente constituye un comportamiento contrario a lo que se exige de los miembros de nuestra Judicatura. Además, apropiarse sin autorización de unas libretas propiedad de un empleado y difundir su contenido constituye una falta de respeto hacia dicho empleado, aun cuando el querellado pudo haber tenido razón para pensar que el contenido de dichas libretas podría afectarle personalmente. Realizar imputaciones falsas e infundadas de “carpeteo” en su contra también constituye un acto contrario a los postulados éticos a los cuales están sujetos los jueces.
Ciertamente, la actuación del alguacil al realizar unas anotaciones sobre las acciones del querellado se prestó para malentendidos y situaciones incómodas. Dichas anotaciones no tenían necesariamente que ver con los incidentes que ocurrían entre el alguacil y el querellado, contrario a las instrucciones que se le habían provisto, por lo que no hay duda de que estos factores aumentaron la tensión general habida entre ambos. No obstante, el juez tiene la obligación de mantener su ecuanimidad ante estas *195 circunstancias y evitar recurrir a una conducta irrespe-tuosa o al uso de lenguaje soez contra los funcionarios de la Rama Judicial. Esta conducta lacera la dignidad de su cargo y afecta la confianza y el respeto que exige el Sistema Judicial. In re Cruz Aponte, supra, pág. 188; In re Hon. Maldonado Torres, supra, págs. 868-869.
Por otro lado, el juez Claverol Siaca iníringió el Canon 23 de Etica Judicial, supra, al incumplir con el deber general de exhibir un comportamiento que no deshonre el cargo judicial ni cree dudas sobre su capacidad para adjudicar las controversias que se presentan ante su consideración. Sus actuaciones al ocupar las libretas del alguacil Rosa Fuentes sin su autorización y divulgar su contenido ocasio-naron que éste se hiciera público en la prensa del país. Dicho contenido, además, fue malinterpretado y culminó en imputaciones incorrectas de "carpeteo” que laceraron la imagen de la Rama Judicial. Esta conducta exhibida por el querellado deshonra el cargo que ocupa al no demostrar mesura en sus actuaciones y desencadenar una serie de eventos peijudiciales para la Judicatura. De igual manera, deshonró su cargo al exhibir un comportamiento irrespe-tuoso y utilizar un lenguaje soez en reuniones oficiales contra funcionarios del tribunal y al mencionar figuras públi-cas y políticas, e insinuar que conocer o haber trabajado con éstas podría influir de forma alguna en su comporta-miento o en el trato que recibe por parte de la Rama Judicial. Esta conducta es contraria al temperamento judicial que tienen que exhibir en todo momento los miembros de nuestra Judicatura. Véanse: In re Suárez Marchán, supra; In re Cruz Aponte, supra; In re Hon. Maldonado Torres, supra.
Asimismo, la conducta del querellado fue contraria al Canon 30 de Etica Judicial, supra, que impone a los jueces el deber de actuar libre de influencias externas y les im-pide ejercer una influencia indebida sobre otros jueces o funcionarios públicos. Las expresiones del juez Claverol *196 Siaca al mencionar nombres de figuras políticas y funcio-narios de gobierno durante una reunión con funcionarios del tribunal, e insinuar que tales personas podían tener algún tipo de efecto o influencia en el trato que el quere-llado recibe por parte de la Rama Judicial, constituyen ale-gaciones impropias contrarias a los postulados éticos a los cuales está sujeto el querellado.
En cuanto a los cargos relacionados con la intervención indebida con posibles testigos en el procedimiento discipli-nario y la negativa a tratar como confidencial cierta infor-mación de personal, la Comisión determinó que no se ha-bían cometido las violaciones imputadas. Estamos de acuerdo. De la evidencia recopilada no se deduce que el juez Claverol Siaca haya intervenido indebidamente con posibles testigos en el proceso disciplinario en su contra. Por el contrario, surge que se comunicó con su secretaria y con dos alguaciles, y que se limitó a informarles sobre el procedimiento disciplinario en su contra. No hay evidencia de que intentara influenciar o modificar el posible testimo-nio de estas personas. Por lo tanto, el juez Claverol Siaca no infringió los Cánones 7 y 14 de Etica Judicial, supra, según se le había imputado.
En cuanto a la imputación relacionada a faltar al deber de confidencialidad, la evidencia tampoco sostuvo que se violara dicha disposición. Si bien es cierto que el quere-llado rehusó discutir ciertos asuntos de personal a puerta cerrada con el alguacil Rosa Fuentes y con la señora Her-nández Valentín, no existe prueba que demuestre que el juez Claverol Siaca difundió la información recibida en dichas reuniones. Así, pues, el querellado no infringió el Canon 18 de Etica Judicial, supra.
Es menester aclarar que las imputaciones éticas hechas contra el juez Claverol Siaca no tienen que ver con sus funciones adjudicativas en el tribunal, sino con su conducta hacia los funcionarios de la Rama Judicial. Aunque los Cánones 8, 13, 14 y 18 aparecen bajo el acápite de Fun- *197 ción Judicial Adjudicativa en los Cánones de Etica Judicial de 2005, ello no significa que la conducta que se re-quiere de los miembros de la Judicatura en los procesos adjudicativos no sea exigible en sus demás funciones o en su comportamiento fuera de sala. Anteriormente hemos ex-presado que los acápites de los Cánones de Etica Judicial no constituyen camisas de fuerza que impidan su interpre-tación más allá de su clasificación interna. In re Cruz Aponte, supra.
Los jueces tienen la obligación de comportarse de una manera respetuosa hacia todos los entes involucrados en el proceso judicial, desde las partes y sus abogados hasta los empleados de la Rama Judicial que colaboran en los tribunales. El propio preámbulo de los Cánones de Etica Judicial establece el deber que tienen los jueces de exhibir un comportamiento ejemplar tanto en su vida profesional —en todos sus ámbitos— como en su vida privada. La función del juez, por su importancia particular en nuestro sistema de justicia, le requiere ser íntegro y honesto tanto en su función de interpretación y aplicación del Derecho como en todo el ámbito de su conducta profesional, lo cual incluye su relación con sus compañeros, empleados y subalternos. In re Robles Sanabria, supra, pág. 510.
IV
Por los fundamentos antes expuestos, concluimos que el juez Claverol Siaca violó los Cánones 13, 23 y 30 de Ética Judicial, supra. Aún así, tomamos en consideración su buena reputación profesional y el hecho que el juez Clave-rol Siaca ofreció una disculpa pública a los funcionarios a quienes ofendió con su conducta. En vista de ello, se le impone una censura como sanción disciplinaria y se le apercibe de que en el futuro deberá velar celosamente por que su conducta y sus expresiones se ajusten al comporta-miento requerido de todos los miembros de la Judicatura.

*198
Se dictará Sentencia de conformidad.

El Juez Asociado Señor Rivera Pérez concurrió con el resultado sin opinión escrita.

 Específicamente, expresó que él pertenecía a la era de los fiscales de Pedro Colton, que había trabajado para el ex gobernador Carlos Romero Barceló y que había estudiado con la esposa del Gobernador, Hon. Aníbal Acevedo Vilá. Además, mencionó que conocía a otras personas que trabajaban en el Gobierno.

 Cabe señalar que el alguacil Rosa Fuentes no se había percatado de que las libretas en controversia no estaban bajo su poder. No fue sino hasta después de esta reunión en la oficina del juez Taboas Dávila que lo supo por conducto del alguacil Meléndez Rodríguez.

 En efecto, el querellado se disculpó con el alguacil Omar Rosa Fuentes, el alguacil José O. Meléndez Rodríguez, la Sra. Martha Hernández Valentín y la Sra. Marisol Meléndez Ortiz.

 Los Cánones de Etica Judicial de 2005 entraron en vigor el 5 de octubre de 2005. Véase Resolución del Tribunal Supremo de 5 de abril de 2005 en In re Aprobación Cánones Ética 2005, 164 D.P.R. 403 (2005).

 Se refiere al Canon II de Ética Judicial de 1977 (4 L.P.R.A. Ap. IV-A), en el cual está basado el primer párrafo del Canon 8 de Ética Judicial de 2005 (4 L.P.R.A. Ap. IV-B).

 Si bien es cierto que el informe de la Comisión y la prueba que obra en el expediente no nos permiten determinar exactamente quien fotocopió las libretas del alguacil Rosa Fuentes ni quien filtró la información a la prensa, no cabe duda alguna que la divulgación de su contenido por parte del juez Claverol Siaca fue la causa de que la información apareciera en los medios del país.