EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> Hon. Aníbal Lugo Irizarry | 2021 TSPR 129 <br><br> 207 DPR _____ |

Número del Caso: AD-2019-2

Fecha: 25 de agosto de 2021

Abogados del Promovido:

      Lcdo. Ramón E. Colón Pratts
      Lcdo. Ivandeluis Miranda Vélez

Oficina de Administración de los Tribunales
Oficina de Asuntos Legales:

      Lcda. Cristina Guerra Cáceres
      Lcda. Ana L. Duque García
      Lcda. Carmen A. Pesante Martínez

Comisión de Disciplina Judicial:

      Lcda. Lourdes V. Velázquez Cajigas
      Presidenta

      Lcda. Evelyn Benvenutti Toro
      Comisionada Asociada

      Lcdo. José Miranda De Hostos
      Comisionado Asociado

Abogados de Querellado:

      Lcdo. Pedro E. Ortiz Álvarez
      Lcdo. Carlos J. García Morales
      Lcdo. Jesús A. Rodríguez Urbano

Materia: Disciplina Judicial- Censura enérgica por infringir los Cánones 4, 6, 7, 13 y 23 de Ética Judicial y la Regla 10 de las Reglas de Disciplina Judicial.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Hon. Aníbal Lugo Irizarry

AD-2019-002

*PER CURIAM*

En San Juan, Puerto Rico, a 25 de agosto de 2021.

En el presente caso nos vemos en la obligación de ejercer nuestra facultad disciplinaria sobre un juez que incurrió en conducta contraria a los Cánones 4, 6, 7, 13 y 23 de Ética Judicial, *infra*, y a la Regla 10 de Disciplina Judicial, *infra*. Veamos.

I.

El Hon. Aníbal Lugo Irizarry fue admitido al ejercicio de la abogacía el 4 de enero de 1988. Posteriormente, el 17 de julio de 2012 éste juramentó como juez superior y, tras haberse desempeñado en varias salas del foro primario, el 1 de marzo de 2017 fue designado como Juez Administrador Auxiliar del

Tribunal de Primera Instancia del Municipio de San Germán, el cual forma parte de la Región Judicial de Mayagüez.

Surge del expediente ante nuestra consideración que, el 20 de junio de 2018 la Hon. Mónica Alpi Figueroa -- Jueza Superior asignada al Tribunal de Primera Instancia de Cabo Rojo -- presentó, ante la Oficina de Asuntos Legales de la Oficina de Administración de los Tribunales (en adelante, "OAL"), una queja juramentada en contra del juez Lugo Irizarry. En ella, la referida jueza sostuvo que este último, presuntamente, realizó ciertos comentarios difamatorios y antiéticos sobre su persona frente al señor Francis Rodríguez Negrón, alguacil adscrito a la Región Judicial de Mayagüez (en adelante, "alguacil Rodríguez Negrón"); comentarios dirigidos a establecer que ésta alegadamente había acudido a La Fortaleza -- junto a su tío, el licenciado Francis Vargas Leyro -- a oponerse a la renominación como juez del Juez Administrador de la Región Judicial de Mayagüez, el Hon. Lind O. Merle Feliciano.

Dicha queja fue notificada al juez Lugo Irizarry quien, oportunamente, presentó sus comentarios escritos sobre la misma. En esencia, este último reconoció haber compartido con el alguacil Rodríguez Negrón el contenido de determinada conversación que había escuchado mientras almorzaba en cierto restaurante del Municipio de San Germán. Explicó el juez que, cuando llegó a la sede del Tribunal para el cual laboraba -- a modo confidencial -- le contó al alguacil

Rodríguez Negrón lo escuchado y alegó haberle indicado a este último que no hiciera expresión alguna sobre ello, pues dicha información no había sido corroborada. Sostuvo, además, que con la única persona con quien compartió la referida información fue con el alguacil Rodríguez Negrón.

Así las cosas, luego de que la OAL evaluara el contenido de la queja, así como la contestación brindada por el juez Lugo Irizarry, el Director Administrativo de los Tribunales, Hon. Sigfrido Steidel Figueroa, autorizó el inicio de una investigación en contra del referido juez. Realizada la investigación de rigor, la OAL emitió el correspondiente *Informe de Investigación*.

Del referido *Informe* se desprende que, a principios del mes de mayo de 2018, mientras el juez Lugo Irizarry se encontraba laborando en el Tribunal de Primera Instancia de San Germán, éste acudió a almorzar a determinado restaurante. Estando en el mencionado restaurante, el referido juez escuchó a unas personas comentar que la jueza Alpi Figueroa acudió a La Fortaleza, -- junto a su tío, el licenciado Francis Vargas Leyro --, a oponerse a la renominación al cargo de juez superior del juez Merle Feliciano, quien para ese entonces fungía como Juez Administrador de la Región Judicial de Mayagüez.

Finalizado el mencionado almuerzo, a su regreso al Tribunal de Primera Instancia de San Germán, el juez Lugo Irizarry -- sin corroborar su veracidad -- le comentó al

alguacil Rodríguez Negrón lo que había escuchado en el restaurante que se encontraba. Acto seguido, y respecto a la renominación del juez Merle Feliciano, el referido juez le expresó al mencionado funcionario del Poder Judicial "[ese] es mi gallito … yo voy a él".

Posteriormente, el 8 de mayo de 2018 para ser específicos, el alguacil Rodríguez Negrón tuvo una conversación con la Hon. Angie Acosta Irizarry, jueza municipal del Tribunal de Primera Instancia de Lajas, la cual versó sobre los nombramientos de jueces y juezas que estaban por vencer próximamente.[1] Como parte de dicha conversación, el mencionado alguacil le expresó a la jueza Acosta Irizarry lo que le había comentado el juez Lugo Irizarry respecto a lo presuntamente hecho por la jueza Alpi Figueroa.

Enterada de lo anterior, y en igual fecha, -- mediante llamada telefónica --, la jueza Acosta Irizarry se comunicó con la jueza Alpi Figueroa y le informó de lo ocurrido y de la actuación que se le imputaba. En respuesta, esta última expresó que dichos comentarios eran falsos y, a su vez, se comunicó con el alguacil Rodríguez Negrón quien le confirmó que el juez Lugo Irizarry aseveró que ella y su tío habían acudido a La Fortaleza para oponerse al nombramiento del juez Merle Feliciano.

---

[1] La jueza Acosta Irizarry se desempeñaba como jueza municipal del Tribunal de Primera Instancia en las Salas de Lajas, Maricao y Sabana Grande.

Luego de varios incidentes no necesarios aquí pormenorizar, la jueza Alpi Figueroa formalizó la queja que nos ocupa.[2] Autorizado el inicio de la investigación sobre lo allí denunciado, el 17 de agosto de 2018 el investigador de la OAL acudió al Tribunal de Primera Instancia de San Germán para notificarle al juez Lugo Irizarry la queja que se había presentado en su contra.

Enterado de lo anterior, el juez Lugo Irizarry le solicitó al alguacil Rodríguez Negrón que acudiera a su despacho. A su llegada a la oficina del juez Lugo Irizarry, el alguacil Rodríguez Negrón observó al togado molesto, con unos documentos en su mano y con su semblante rojo. Acto seguido, el juez Lugo Irizarry le comentó al referido alguacil que le habían notificado una queja presentada en su contra por la jueza Alpi Figueroa, la cual mencionaba su nombre y que el contenido de la misma era frívolo. Ante ello, el juez Lugo Irizarry le solicitó al alguacil Rodríguez Negrón que prestara una declaración jurada en la cual desmintiera lo que se decía en la queja.

Finalizada la reunión entre ambos, y ante la insistencia del juez Lugo Irizarry, el alguacil Rodríguez Negrón se llevó consigo copia de la queja. Empero, una vez este último llegó a su oficina colocó la queja en una caja fuerte por entender que el contenido de la misma era

---

[2] Surge del *Informe* bajo estudio que, previo a la presentación de la queja, la jueza Alpi Figueroa intentó reunirse con el juez Lugo Irizarry y el juez Merle Feliciano, pero dicha reunión nunca llegó a celebrarse por lo que, luego de varios días, formalizó la referida queja.

confidencial y para evitar que otras personas tuviesen conocimiento sobre ella. Sobre el particular, el alguacil Rodríguez Negrón testificó ante la OAL que, durante la mencionada reunión, el juez Lugo Irizarry estaba molesto, manoteaba con los papeles, le habló en un tono de voz fuerte, como nunca antes, y le solicitó que preparara una declaración jurada en al menos seis (6) a ocho (8) ocasiones.

Ese mismo día, entiéndase el 17 de agosto de 2018, el juez Lugo Irizarry también se presentó ante la Oficina de Alguaciles en el Tribunal de Primera Instancia de San Germán. Allí, este último, -- molesto y con actitud autoritaria e intimidante --, le manifestó a los alguaciles que había recibido una queja presentada por la jueza Alpi Figueroa, que a su juicio era frívola, y en la cual estaba involucrado el alguacil Rodríguez Negrón. Asimismo, le expresó a los alguaciles que el personal que laboraba en el Tribunal de Primera Instancia de San Germán debía gozar de su confianza y que, a raíz de la queja, algunos empleados del Tribunal podían ser trasladados.

Acto seguido, el juez Lugo Irizarry se dirigió al área de Secretaría del Tribunal de Primera Instancia de San Germán y convocó a las secretarias a una reunión, a quienes -- nuevamente, utilizando un tono de molestia e indignación -- les leyó fragmentos de la queja presentada en su contra. Inmediatamente, éste les preguntó a las secretarias que estaban presentes en la reunión si en alguna ocasión le

habían escuchado realizar las expresiones que se le imputaban. Del mismo modo, este último aseveró que podían trasladarse empleados del tribunal a raíz de la investigación de la queja, incluyéndolo a él. A diferencia de lo ocurrido durante la reunión con el alguacil Rodríguez Negrón, el juez Lugo Irizarry no les solicitó declaraciones juradas a las secretarias.

Al día siguiente, entiéndase el 18 de agosto de 2018, el juez Lugo Irizarry llamó por teléfono a la jueza Acosta Irizarry y le comentó sobre la queja presentada en su contra, así como que en ella se mencionaba el nombre de esta última. Por su parte, la mencionada togada le manifestó al juez Lugo Irizarry que desconocía que se había presentado una queja en su contra y, seguidamente, mencionó que el alguacil Rodríguez Negrón le había hecho referencia a la comunicación sostenida con éste con relación a la alegada conducta de la jueza Alpi Figueroa.

Sobre el particular, el juez Lugo Irizarry le aclaró a la jueza Acosta Irizarry que ello no había ocurrido de la forma relatada por el alguacil Rodríguez Negrón, sino que lo que le expresó a este último era que, estando en cierto restaurante en el pueblo de San Germán, escuchó el comentario -- en una mesa cercana -- de que la jueza Alpi Figueroa había ido con su tío a La Fortaleza con el fin de oponerse al nombramiento del juez Merle Feliciano.[3]

---

[3] La jueza Acosta Irizarry declaró ante la OAL que le sorprendió que el juez Lugo Irizarry hubiese realizado el comentario sobre la alegada

De otra parte, y ya en lo relacionado a lo acaecido luego de que el juez Lugo Irizarry fuera notificado de la queja en su contra, precisa señalar que éste presentó su contestación a la misma ante la OAL. En su escrito, el juez Lugo Irizarry sostuvo que, una vez el alguacil Rodríguez Negrón advino en conocimiento del contenido de la queja, éste le comentó que las cosas no habían ocurrido según allí se indicaba, razón por la cual le solicitó a este último una declaración jurada. Señaló, también, que los alguaciles del Tribunal de Primera Instancia de San Germán que se encontraban presentes en la reunión que éste convocó el 17 de agosto de 2018, con sus gestos, le expresaron que no habían escuchado comentario alguno con relación al contenido de la queja.

Por otro lado, arguyó que en la reunión con las secretarias del Tribunal de Primera Instancia de San Germán, celebrada también el 17 de agosto de 2018, les preguntó si habían escuchado que él expresara lo que se le imputó en la queja, a lo que éstas contestaron en la negativa. Del mismo modo, señaló que les expresó a las mencionadas funcionarias que lo que se alegaba en la queja era preocupante, ya que podía conllevar su traslado a otro tribunal. En cuanto a esto último, el juez Lugo Irizarry adujo que se refería a

---

visita de la jueza Alpi Figueroa a La Fortaleza. Sin embargo, sostuvo que no le sorprendía la expresión de que él iba a su gallito pues la había escuchado anteriormente cuando el mencionado togado le había manifestado que estaba moviendo todos sus contactos y que haría todo lo posible para que renominaran al juez Merle Feliciano. Véase, *Apéndice del Informe de Investigación*, págs. 72-83

un traslado sobre su persona y no sobre otro funcionario, pues no estaba dentro de sus facultades realizar dichos movimientos de personal.

Por último, el juez Lugo Irizarry argumentó que no fue su intención intervenir de forma alguna con posibles testigos o prueba documental. Empero, ante la gravedad de la conducta que se le imputó, entendió apropiado indagar entre sus compañeros y compañeras si ellos entendían que él había realizado las expresiones que se alegaban en la queja.

Así pues, a la luz de los hechos antes reseñados, así como de la prueba documental y los testimonios vertidos, la OAL concluyó en el discutido *Informe de Investigación* que la conducta exhibida por el juez Lugo Irizarry era contraria a sus deberes y responsabilidades bajo el Preámbulo de los Cánones de Ética Judicial, *infra*, así como a los Cánones 4, 6, 7, 13 y 23 del referido cuerpo deontológico y a la Regla 10 de las Reglas de Disciplina Judicial, *infra*. En consecuencia, el referido *Informe* fue sometido ante la consideración de la Comisión de Disciplina Judicial, solicitando el comienzo de un proceso disciplinario en contra del juez Lugo Irizarry.

Evaluado el contenido del precedente *Informe*, el 11 de marzo de 2019 la Comisionada Asociada, Hon. Ygrí Rivera de Martínez, emitió una *Resolución* en la cual determinó que, conforme a la prueba presentada, existía causa probable para radicar querella en contra del juez Lugo Irizarry por

posible violación de las disposiciones deontológicas antes mencionadas. Consecuentemente, la Oficina de Administración de los Tribunales (en adelante, "OAT") presentó la querella correspondiente.

En síntesis, en el mencionado documento, la OAT formuló los siguientes cargos en contra del juez Lugo Irizarry:

**A.     Primer Cargo**

La OAT razonó que el juez Lugo Irizarry vulneró la conducta exigida por los Cánones de Ética Judicial, *infra*, en lo referente al trato de cordialidad y respeto que debe permear las relaciones de los jueces y juezas. Ello, al realizar las ya discutidas expresiones sobre la jueza Alpi Figueroa al alguacil Rodríguez Negrón, sin tan siquiera corroborar la información o considerar que la misma podía ser incorrecta. La referida Oficina entendió que, al así actuar, el togado infringió los Cánones 6 y 23 de Ética Judicial, *infra*, apartándose de la prudencia y el respeto mutuo exigido entre compañeros jueces y juezas, en detrimento del prestigio profesional de la jueza Alpi Figueroa y en menoscabo de la imagen de la judicatura.

**B.     Segundo Cargo**

De otra parte, y según se expresa en la mencionada querella, la OAT también consideró que el juez Lugo Irizarry intervino indebidamente con el alguacil Rodríguez Negrón, en su carácter de testigo, durante el curso de la investigación administrativa realizada en virtud de la queja

presentada por la jueza Alpi Figueroa. Lo anterior, al compartir el contenido de dicho documento y, de forma reiterada, solicitarle al referido alguacil que -- mediante una declaración jurada -- proveyera información falsa o incorrecta sobre lo imputado con el fin de utilizarla en su defensa durante la investigación en curso.

Consecuentemente, el referido organismo de la Rama Judicial determinó que el juez Lugo Irizarry intervino indebidamente con un potencial testigo y con aspectos del proceso disciplinario, lacerando así la confidencialidad e integridad del procedimiento investigativo que se llevaba en su contra. Todo ello, en contravención de los Cánones 4 y 7 de Ética Judicial, *infra*, y la Regla 10 de Disciplina Judicial, *infra*.

**C.     Tercer cargo**

Por otro lado, se desprende del contenido de la querella bajo análisis que la OAT entendió que el juez Lugo Irizarry no actuó con la debida circunspección, consideración y respeto hacia el alguacil Rodríguez Negrón, tras insistirle de forma reiterada en cuanto a lo que debía exponer en la declaración jurada, a pesar de la negativa de este último para declarar lo solicitado. A juicio de la referida Oficina, la conducta del juez laceró la integridad del procedimiento investigativo disciplinario que se llevaba en su contra, conducta prohibida por los Cánones 13 y 23 de Ética Judicial, *infra*.

### D.    Cuarto cargo

Asimismo, la OAT esbozó -- en la querella bajo estudio -- que el juez Lugo Irizarry actuó ensoberbecido de poder durante el curso de la investigación de la queja, al reunir a los alguaciles del Tribunal de Primera Instancia de San Germán y compartirles el contenido de la queja, hacer preguntas y comentarios, y advertirles sobre las posibles consecuencias que podía conllevar el procedimiento disciplinario en el personal de dicho Tribunal. De esta forma, según la OAT, el juez Lugo Irizarry intervino indebidamente con dichos funcionarios en su carácter de posibles testigos, promovió incertidumbre y un ambiente laboral tenso. A su vez, surge del contenido de la querella que la conducta del referido togado laceró la confidencialidad e integridad del procedimiento investigativo, todo lo anterior en contravención de los Cánones 4, 7, 13 y 23 de Ética Judicial, *infra*, y la Regla 10 de Disciplina Judicial, *infra*.

### E.    Quinto cargo

Por último, la OAT concluyó que el juez Lugo Irizarry actuó ensoberbecido de poder durante el curso de la investigación de la queja, al reunir a las secretarias del Tribunal de Primera Instancia de San Germán para compartir el contenido de la queja presentada en su contra, hacer preguntas y comentarios sobre ésta y advertirles sobre las posibles consecuencias de ello. Según el referido organismo

administrativo, con este proceder el togado intervino indebidamente con dichas funcionarias en su carácter de posibles testigos, promovió incertidumbre y un ambiente de trabajo tenso y, a su vez, laceró la confidencialidad e integridad del procedimiento disciplinario que se llevaba en su contra. La anterior conducta, en violación a lo dispuesto en los Cánones 4, 7, 13 y 23 de Ética Judicial, *infra*, y en la Regla 10 de Disciplina Judicial, *infra*.

Una vez recibió copia de la mencionada querella, el 15 de abril de 2019 el juez Lugo Irizarry presentó su contestación a la misma. En ella, negó que hubiese actuado en forma contraria a la cordialidad y respeto que debe permear entre los jueces y juezas o que su intención fuese intervenir indebidamente con testigos o lacerar la confidencialidad e integridad del proceso administrativo. A su vez, el referido togado afirmó que la querella representaba una persecución selectiva que ignoraba las actuaciones impropias de otros funcionarios, las cuales surgían de las declaraciones juradas prestadas en el curso de la investigación.

Tras varios incidentes procesales, entre los que se encuentran el desfile de toda la prueba documental y testifical, el caso quedó sometido ante la consideración de la Comisión de Disciplina Judicial para su resolución final, la cual estuvo constituida por su Presidenta Interina, licenciada Lourdes V. Velázquez Cajigas, y los Comisionados

Asociados licenciadas Evelyn Benvenutti Toro, Aleida Varona Méndez y el licenciado José Miranda de Hostos. Así, luego de evaluar la evidencia recopilada, la Presidenta Interina de dicha Comisión, rindió el *Informe de la Comisión*.

En apretada síntesis, en su *Informe* la Comisión de Disciplina Judicial resaltó que durante el procedimiento investigativo las partes estipularon que el juez Lugo Irizarry le expresó al alguacil Rodríguez Negrón que había escuchado a unas personas comentar que la jueza Alpi Figueroa había ido con su tío a La Fortaleza a indisponer la renominación del entonces Juez Administrador de la Región Judicial de Mayagüez, el juez Merle Feliciano. Sin embargo, a juicio de la Comisionada, el referido togado -- de forma imprudente y sin prever las posibles consecuencias de su actuación -- divulgó lo escuchado al alguacil Rodríguez Negrón a pesar de desconocer la veracidad o la falsedad del contenido de dicho comentario. Esto, sin tomar en consideración las posibles consecuencias éticas que pudiese representar para la jueza Alpi Figueroa, ni que se trataba de un asunto que afectaba la reputación e integridad de una compañera jueza.

De otra parte, a juicio de la Comisión de Disciplina Judicial, el juez Lugo Irizarry quebrantó la confidencialidad del proceso disciplinario y no enalteció la integridad de su ministerio ni estimuló el respeto y la confianza en la Judicatura. Lo anterior, debido a que --

aunque la etapa del proceso disciplinario en la que se encontraba la queja era de naturaleza confidencial -- el referido togado compartió la información no solo con el alguacil Rodríguez Negrón, quien era el testigo principal, sino también con varios otros alguaciles y personal de la Secretaría.

De conformidad con lo antes expuesto, la Comisión concluyó que la conducta desplegada por el juez Lugo Irizarry fue contraria a los postulados éticos que rigen a los integrantes de la judicatura. En particular, los Cánones 4, 6, 7, 13 y 23 de Ética Judicial, *infra*, y la Regla 10 de Disciplina Judicial, *infra*. En virtud de ello, la Comisión de Disciplina Judicial le recomendó a este Tribunal la imposición de una fuerte amonestación y censura en contra del juez Lugo Irizarry por la conducta desplegada.

En atención a lo anterior, el juez Lugo Irizarry presentó una *Moción de determinaciones de hechos adicionales a tenor con la Regla 28(c)(3) del Reglamento de la Comisión*. Mediante *Resolución* de 2 de noviembre de 2020, dicha moción fue declarada no ha lugar.

Es, pues, a la luz de los hechos antes expuestos que procedemos a esbozar la normativa aplicable al proceso disciplinario ante nuestra consideración.

II.

Como es harto conocido, los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, constituyen las normas mínimas de conducta

que deben cumplir celosamente quienes tienen la encomienda de impartir justicia en nuestro País. *In re Aprobación Cánones de Ética Judicial*, 164 DPR 403, 409 (2005). Véanse, además, *In re Grau Acosta*, 172 DPR 159, 170 (2007); *In re Cruz Aponte*, 159 DPR 170, 178 (2003). Así, el precitado cuerpo deontológico guía el comportamiento de dichos funcionarios y funcionarias -- que tienen el honor de vestir una toga -- de manera que sea ejemplar y fomente el respeto y la confianza del Pueblo hacia el sistema de justicia. *In re Cancio González,* 190 DPR 290, 297 (2014); *In re Claverol Siaca*, 175 DPR 177, 187 (2009). Consecuentemente, debido a la naturaleza de su función, a los jueces y a las juezas se les exige una conducta ejemplar en todo momento, dentro y fuera del tribunal. *In re González Rodríguez*, 201 DPR 174, 204 (2018); *In re Claverol Siaca*, *supra*, pág. 189.

Cónsono con lo anterior, en el Preámbulo del referido cuerpo de normas deontológicas "[s]e reconoce la importancia de la función judicial y se impone a los jueces [y a las juezas] el deber y la responsabilidad de aceptar ciertas restricciones a su conducta, tanto en el ámbito de sus funciones judiciales como en otras actividades profesionales y personales". *Cánones de Ética Judicial*, *supra*. *Véanse*, *In re Birriel Cardona,* 184 DPR 301, 306 (2012); *In re Claverol Siaca*, *supra*, pág. 188; *In re Grau Acosta*, *supra*. Por tanto, estas limitaciones constituyen sacrificios en su vida pública y privada que tienen como propósito enaltecer la

integridad e independencia del Poder Judicial. *In re Quiñones Capacetti,* 195 DPR 281, 295 (2016); *In re Berríos Jiménez*, 180 DPR 474, 475 (2010); *In re Claverol Siaca*, *supra*, pág. 188. Del mismo modo, se resalta la obligación de los togados y las togadas de fomentar y ejercer un trato respetuoso y cordial hacia sus pares, los funcionarios de la Rama Judicial y las personas que comparezcan a sus salas. *In re Santiago Concepción*, 189 DPR 378, 401 (2013); *In re Claverol Siaca*, *supra*, págs. 188-89; *In re González Acevedo*, 165 DPR 81, esc. 8 (2005).

Así pues, y en lo pertinente al asunto que nos ocupa, el **Canon 4** de Ética Judicial, *supra*, le impone a los jueces y a las juezas el deber de cumplir cuidadosa y diligentemente las obligaciones administrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial. *In re Benero García*, 202 DPR 218, 377-78 (2019); *In re Mercado Santaella*, 197 DPR 1032, 1066 (2017); *In re Pagani Padró*, 181 DPR 517 (2011). Del mismo modo, éstos y éstas cumplirán diligentemente las normas y órdenes administrativas pertinentes de la Oficina de Administración de los Tribunales. Canon 4, Cánones de Ética Judicial, 4 LPRA Ap. IV-B, C. 4. Véase, *In re Santiago Concepción*, *supra*, pág. 402; *In re Sierra Enríquez*, 185 DPR 830, 851 (2012). Así pues, el correcto desempeño de las funciones judiciales no se limita a aquellas estrictamente adjudicativas, sino también a la obligación de cumplir de forma diligente las

normas administrativas que les sean aplicables. *In re Aprobación Cánones de Ética Judicial*, *supra*, pág. 413.

Por otro lado, el **Canon 6** del mencionado ordenamiento deontológico requiere que los jueces y las juezas cooperen entre sí para lograr la más eficiente administración de la justicia. Canon 6, Cánones de Ética Judicial, 4 LPRA Ap. IV-B, C. 6. A esos fines, "[s]u conducta estará enmarcada en el respeto mutuo, la cordialidad y la colaboración profesional, sin que importen las diferencias en sus posiciones dentro del sistema judicial". *Íd.* De particular importancia, dispone el referido Canon que éstos y éstas se abstendrán de realizar "[c]ríticas infundadas que tiendan a menospreciar el prestigio de sus compañeros jueces o compañeras juezas". *Íd.* Ello, pues, el correcto ejercicio de las funciones adjudicativas supone actuar de forma prudente, cordial, serena y respetuosa, no solo hacia aquellas personas que acuden a los tribunales o a los funcionarios o funcionarias del tribunal, sino también hacia los compañeros jueces y juezas. *In re Aprobación Cánones de Ética Judicial*, *supra*, pág. 416. Véase, también, *In re Candelaria Rosa*, 197 DPR 445, 460-61 (2017).

En lo que respecta a la interpretación del citado Canon, este Tribunal ha sentenciado que los jueces y las juezas deben lidiar con las diferencias de criterio existentes entre sus compañeros y compañeras. *In re Candelaria Rosa*, *supra*, pág. 464. Como consecuencia, éstos

y éstas deben tener la capacidad de manejar dichas diferencias y sobrellevarlas de forma ecuánime y sosegada. *Íd.* Por lo tanto, si bien los jueces y las juezas tienen la prerrogativa de defender sus respectivos criterios, no pueden perder de perspectiva su deber hacia la sociedad de mantener la cordialidad y serenidad en todo momento para enaltecer el puesto que ocupan. *Íd.*

De otra parte, el **Canon 7** de Ética Judicial, *supra*, dispone cómo debe ser el comportamiento de los jueces y juezas ante procedimientos disciplinarios en contra de cualquier funcionario de la Rama Judicial. En específico, dicho canon sostiene que:

> Cuando los hechos les consten personalmente, las juezas y los jueces promoverán y cooperarán con los procedimientos disciplinarios que procedan contra cualquier jueza, juez, abogada, abogado, funcionaria, funcionario, empleada o empleado de la Rama Judicial que actúe contrario a lo dispuesto en los cánones, en las normas administrativas, reglamentos y leyes vigentes.
>
> Las juezas y los jueces no intervendrán indebidamente con testigos, prueba documental o cualquier aspecto del procedimiento disciplinario. Canon 7, Cánones de Ética Judicial, 4 LPRA Ap. IV-B, C. 7.

Este precepto le requiere a dichos funcionarios y funcionarias de la Judicatura, no sólo conformar su propia conducta a los más altos estándares éticos, sino también velar por que otros jueces, abogados y personal de la Rama Judicial cumplan con las normas de ética judicial y profesional. *In re Claverol Siaca*, *supra*, pág. 191.

En cuanto a la anterior obligación, valga aclarar que el deber de mantener una actitud de cordialidad y respeto que impone el ya discutido Canon 6, *supra*, no excluye la obligación de velar por que la conducta ética de los compañeros jueces y juezas sea cónsona con estos cánones, tanto en sus actividades personales como en el desempeño de las funciones judiciales. *In re Aprobación Cánones de Ética Judicial*, *supra*, pág. 417. Véase, *López Feliciano Ex parte*, 191 DPR 882, 908 (2014) (Rivera García, opinión de conformidad). En consecuencia, el Canon 7 requiere que se promuevan contra éstos o éstas aquellos procedimientos disciplinarios necesarios; independientemente de que ello pueda resultar incómodo, pero siempre y cuando se tenga conocimiento personal sobre la conducta incurrida. *In re Aprobación Cánones de Ética Judicial*, *supra*, págs. 417-18. Véanse, *In re González Porrata-Doria*, 197 DPR 683 (2017); *In re Claverol Siaca*, *supra*.

En esa dirección, la segunda oración del Canon 7 -- la cual establece que las juezas y los jueces no intervendrán indebidamente con testigos, prueba documental o cualquier aspecto del procedimiento disciplinario -- pretende, además, preservar la integridad de los procedimientos disciplinarios e impedir que los jueces intervengan de manera impropia con los testigos o con la evidencia en dichos procedimientos. *In re González Porrata-Doria*, *supra*, pág. 690; *In re Claverol Siaca*, *supra*. Véase, además, *In re Aprobación*

*Cánones de Ética Judicial*, *supra*, pág. 418. Es decir, está prohibida la intervención indebida de los jueces o juezas durante el curso de los procedimientos disciplinarios. *Íd.* Ello incluye, claro está, incitar a un testigo para que altere su testimonio, y también promover un testimonio que es falso, o falsificar evidencia documental. *Íd.* Véanse, también, *In re Clavell Ruiz*, *supra*; *In re Vargas Soto*, 146 DPR 55 (1998).

Establecido lo anterior, -- y conforme a lo dispuesto en el **Canon 13** del mencionado ordenamiento deontológico -- conviene señalar aquí que es deber de los jueces y juezas tratar con consideración y respeto a los abogados y abogadas. 4 LPRA Ap. IV-B, C. 13. Véanse, *In re Quiñones Artau*, 193 DPR 356, 381 (2015); *In re Benero García*, *supra*, pág. 379. De extrema relevancia para el caso que nos ocupa, el referido canon también le requiere a los magistrados y magistradas dirigirse con consideración y respeto a los testigos, jurados, funcionarios o funcionarias del Tribunal y a toda persona que comparezca ante el Tribunal. Canon 13, Cánones de Ética Judicial, 4 LPRA Ap. IV-B, C. 13. Véanse, además, *In re Quiñones Artau*, *supra*; *In re Candelaria Rosa*, *supra*, pág. 461. Sobre el particular, esta Curia ha establecido que "[e]ste deber es consustancial con el respeto a la dignidad del ser humano y aplica tanto en el ejercicio de las funciones judiciales como en el contexto de la vida privada". *In re González Porrata-Doria*, *supra*,

pág. 691. Véase, *In re Aprobación Cánones de Ética Judicial*, *supra*, pág. 427. Respecto a esto último, este Foro ha resuelto que viola el Canon 13 un juez o jueza que presiona e incomoda a un funcionario o funcionaria para que mienta en su beneficio, afectando con ello el sano ambiente laboral y las funciones judiciales o administrativas que ambos ejercen. Véase, *In re González Porrata-Doria*, *supra*.

Por otro lado, el **Canon 23** expresa que "[la]s juezas y los jueces se comportarán públicamente de manera que sus actuaciones no provoquen dudas sobre su capacidad para adjudicar imparcialmente las controversias judiciales[,] no deshonren el cargo judicial y no interfieran con el cabal desempeño de sus funciones judiciales". Canon 23, Cánones de Ética Judicial, 4 LPRA Ap. IV-B, C. 23. Véanse, *In re Mercado Santaella*, *supra*, pág. 1057; *In re Berríos Jiménez*, *supra*, pág. 478. Al respecto, este Tribunal ha reiterado que dicho Canon responde a la alta estima y confianza pública que gozan los miembros de la Judicatura. *In re Candelaria Rosa*, *supra*, pág. 462; *In re Quiñones Artau*, *supra*, pág. 383; *In re Santiago Concepción*, *supra*, pág. 403. Así pues, "[s]e espera que los jueces, a través de sus acciones, no lesionen la imagen del Sistema Judicial". *In re Colón Colón*, 197 DPR 728, 740 (2017); *In re Claverol Siaca*, *supra*, pág. 190.

Conforme a ello, los y las integrantes de la Judicatura tienen que prever y analizar "[l]as posibles consecuencias

de sus actos en términos de las impresiones que terceras personas podrían recibir de ellos". *In re Mercado Santaella*, *supra*, pág. 1056; *In re Hernández Torres*, 167 DPR 823 (2006); *In re Ortiz Rivera*, 163 DPR 530, 535-36 (2004). De esa forma, se evita que comentarios desacertados, y en ocasiones imprudentes, por parte de los y las integrantes de la Judicatura mancillen la confianza de la ciudadanía en la integridad de sus servidores públicos. *In re Mercado Santaella*, *supra*, págs. 1056-57.

En ese sentido, la función judicial requiere que los jueces y las juezas se comporten conforme lo exige su cargo, tanto dentro como fuera del tribunal, y que su comportamiento enaltezca el cargo que ocupan y fomente el respeto hacia éste. *In re Santiago Concepción*, *supra*, pág. 403; *In re Claverol Siaca*, *supra*. Véase, también, *In re Cruz Aponte*, *supra*, págs. 186-87. En otras palabras, "[l]a función de un magistrado o de una magistrada es de tal envergadura que se les exige conducirse éticamente en todo momento, tanto en el ejercicio de las prerrogativas de sus cargos como en sus actividades extrajudiciales". *In re Colón Colón*, *supra*, págs. 739-40.

Por último, precisa señalar aquí que, conforme a lo dispuesto en la **Regla 10** de las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B, los expedientes de la OAL sobre la evaluación e investigación de las quejas que se le presenten son de naturaleza confidencial. Ahora bien, tan

pronto se notifique al juez o jueza promovida "[l]a determinación de la Directora o del Director [Administrativo de los Tribunales] de archivar la queja o de referirla a la Comisión, tanto el informe de investigación, sus anejos y la determinación final, estarán disponibles para escrutinio público". Regla 10(e), Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B, R. 10(e). Asimismo, el juez o jueza promovido podrá renunciar por escrito a la confidencialidad en la etapa de investigación de la queja. Regla 10(b), Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B, R. 10(b).

En cuanto a la anterior regla, en *Ortiz Rivera v. Dir. Adm. de los Tribunales*, 152 DPR 161 (2000), este Foro reconoció la existencia de un interés apremiante en mantener la confidencialidad de la fase investigativa del proceso disciplinario. En dicha ocasión, e interpretando la entonces Regla 12 de las Reglas de Disciplina Judicial -- equivalente a la actual Regla 10 del referido cuerpo reglamentario, *supra* -- expresamos que la confidencialidad de los expedientes de los casos disciplinarios contra jueces y juezas se establece con el propósito de proteger tanto la reputación de éstos y éstas, como la integridad de la Rama Judicial, del daño resultante de posibles imputaciones falsas e inmeritorias. *Íd.* en la pág. 182.

Es, pues, a la luz de la normativa deontológica antes expuesta que procedemos a disponer del caso disciplinario que nos ocupa.

III.

Como mencionamos anteriormente, el presente caso fue referido ante la consideración de la Comisión de Disciplina Judicial, ente administrativo que tuvo la oportunidad de recibir prueba, evaluarla detenidamente, y realizar sus determinaciones de hechos y conclusiones de derecho. En el *Informe de la Comisión* preparado para el procedimiento disciplinario de marras, la Comisionada designada para atender el mismo, licenciada Lourdes V. Velázquez Cajigas, concluyó que la determinación de la OAL -- en cuanto a la violación de los Cánones 4, 6, 7, 13 y 23 del Código de Ética Judicial, *supra*, y la Regla 10 de Disciplina Judicial, *infra*, por parte del juez Lugo Irizarry -- está sostenida por la prueba estipulada y testifical presentada por las partes. Coincidimos con dicha apreciación.

Según se desprende del expediente ante nuestra consideración, no albergamos duda alguna de que -- en lo que respecta a la querella de epígrafe -- el juez Lugo Irizarry infringió los **Cánones 6 y 23** de Ética Judicial, *supra*. Ello, al divulgar en el entorno laboral información no corroborada sobre una compañera jueza, con gran potencial de lacerar la relación profesional habida entre ambos, así como la reputación personal y profesional de la jueza Alpi Figueroa. Con su proceder, el referido togado no reflejó un uso cuidadoso y prudente de sus expresiones, deber que se le exige a todo juez y jueza, tanto en el ámbito de sus

funciones judiciales como en su vida privada. Asimismo, su actuación quebrantó la cordialidad y colaboración profesional que debe imperar entre los compañeros jueces y juezas.

De otra parte, la prueba recopilada como parte del presente proceso disciplinario también reveló que el juez Lugo Irizarry intervino indebidamente con potenciales testigos de una investigación administrativa conducida en su contra, entiéndase el alguacil Rodríguez Negrón, al requerirle -- de forma insistente -- que prestara una declaración jurada desmintiendo el contenido de determinada queja. La aludida conducta constituye una intervención indebida con posibles testigos, por lo que infringió el **Canon 7** de Ética Judicial, *supra*.

Además, en el presente proceso disciplinario, quedó claramente establecido que el juez Lugo Irizarry faltó a la confidencialidad del proceso disciplinario en curso al discutir con el alguacil Rodríguez Negrón las alegaciones de la queja presentada en su contra e, incluso, proveerle una copia de ésta. Ciertamente, con su comportamiento, el referido juez no actuó con la diligencia y el debido cuidado que se exige en el manejo de un asunto confidencial. El deber de preservar la confidencialidad de la queja cobró mayor relevancia considerando que la promovente de la misma fue una compañera jueza y que los hechos imputados versaban sobre expresiones realizadas por el juez Lugo Irizarry

respecto a una presunta conducta incurrida por esta última. Todo lo anterior, sin duda alguna, se aparta de lo dispuesto en el **Canon 4** de Ética Judicial, *supra*, así como de la **Regla 10** de Disciplina Judicial, *supra*.

Por otro lado, de los documentos que obran en el expediente ante nos, se desprende que el trato brindado por el juez Lugo Irizarry al alguacil Rodríguez Negrón -- durante su reunión con este último el 17 de agosto de 2018 -- fue contrario al respeto y consideración que exige el **Canon 13** de Ética Judicial, *supra*. El tono y las expresiones realizadas por el referido togado -- incluso cuando el alguacil le recordó la naturaleza confidencial del asunto y demostró su rechazo en cuanto a la declaración jurada solicitada -- laceró la relación profesional entre éstos y creó un ambiente laboral tenso y hostil.

Por último, la prueba desfilada también estableció que el juez Lugo Irizarry se reunió con otros alguaciles del Tribunal de Primera Instancia de San Germán y con personal de la Secretaría de dicho foro. En esa ocasión, éste le leyó fragmentos de la queja -- la cual al momento de los hechos era de índole confidencial -- y les reveló información sobre posibles testigos. Más preocupante aún, les comunicó su postura en cuanto los efectos que, a su juicio, podía tener el proceso disciplinario en los empleados del mencionado Tribunal, causándoles incertidumbre y preocupación. Evidentemente, ante la

información compartida y los requerimientos solicitados durante estas reuniones -- así como los efectos que sus expresiones tuvieron en los funcionarios del tribunal -- la conducta del magistrado contravino lo preceptuado en los **Cánones 4, 7, 13 y 23** de Ética Judicial, *supra*.

IV.

A la luz de todo lo antes expuesto, concluimos que el juez Aníbal Lugo Irizarry violó los Cánones 4, 6, 7, 13 y 23 de Ética Judicial, *supra*, así como la Regla 10 de Disciplina Judicial, *supra*. En consecuencia, ejercemos nuestra facultad disciplinaria y censuramos enérgicamente al referido juez por la conducta incurrida que dio margen al presente proceso disciplinario.

Asimismo, le apercibimos que, en el futuro, deberá velar celosamente que su conducta y expresiones se ajusten al comportamiento requerido -- por los Cánones de Ética Judicial, *supra* -- a los y las integrantes de la Judicatura.

Notifíquese por correo electrónico y por la vía telefónica esta Opinión *Per Curiam* y *Sentencia* al juez Aníbal Lugo Irizarry.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Hon. Aníbal Lugo Irizarry          AD-2019-2

SENTENCIA

En San Juan, Puerto Rico, a 25 de agosto de 2021.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, censuramos enérgicamente al juez Aníbal Lugo Irizarry por la conducta incurrida que dio margen al presente proceso disciplinario.

Asimismo, se le apercibe al juez Aníbal Lugo Irizarry que, en el futuro, deberá velar celosamente que su conducta y expresiones se ajusten al comportamiento requerido por los Cánones de Ética Judicial, 4 LPRA Ap. IV-B, a los y las integrantes de la Judicatura.

Notifíquese por correo electrónico y por la vía telefónica esta Opinión *Per Curiam* y Sentencia al juez Aníbal Lugo Irizarry.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez hace constar la siguiente expresión:

"El Juez Asociado señor Estrella Martínez está conforme con la conclusión de este Tribunal, en la que acertadamente se determina que el Juez Aníbal Lugo Irizarry violó múltiples Cánones de Ética Judicial. Ciertamente, su conducta, a la luz del derecho expuesto en la Opinión certificada en el día de hoy, sostiene esa conclusión. Ahora bien, considero que la sanción de censura adoptada por una Mayoría de este Tribunal es sumamente leniente. Esa medida disciplinaria no es proporcional con la conducta incurrida y no guarda una relación con las acciones dirigidas a intervenir indebidamente con el proceso disciplinario que se llevaba en su contra, el trato demostrado a funcionarios judiciales durante ese proceso, incluyendo a un testigo y a potenciales testigos. Ante ese cuadro, opino que este Tribunal debió adoptar una sanción de suspensión de empleo y sueldo".


José Ignacio Campos Pérez
Secretario del Tribunal Supremo